# Homan v. Stewart.

*Bill in Equity for the Specific Performance of a Contract of Sale of Land.*

1. *Specific performance of contract of sale; construction of contract.*—On a bill filed to enforce the specific execution of an alleged contract of sale of a certain lot, it was shown that upon the exchange by defendant of a lot owned by him for complainant's interest in certain lots, the defendant executed the following writing: "Anniston, Ala., April 8, 1890. Received of * * * [complainant] one hundred dollars in cash, and interest in certain city lots at Shelby, Alabama, valued at eleven hundred dollars ($1,100) in consideration for warranty deed of my lot on west side of Wilmer street, between Eleventh and Twelfth streets, and thirty-five feet on Wilmer, and running back one hundred feet to an alley," signed by defendant. *Held:*

(a.) The land sold is presumed to be situated in the city of Anniston, the memorandum of sale bearing date of execution at that city.

(b.) The description of the lot sold, as contained in the memorandum of sale, is certain, in that it can be rendered certain.

(c.) The time of the performance of the contract, by executing a warranty deed to the lot sold, was not distant, but immediate.

(d.) The memorandum of sale was not void under the statute of frauds.

(e.) The contract for the sale of the lot by defendant was sufficiently certain and definite to be specifically performed.

2. *Same; when mistake in name self-corrective.*—In a suit to enforce the specific execution of a contract of sale of a certain lot, which was given in exchange for complainant's interest in certain other lots, it was shown that when the defendant executed and delivered to complainant the contract sought to be enforced, the latter assigned, as a part of the purchase price of the former's lot, his interest in the lots exchanged therefor, to defendant by indorsing a transfer on the following receipt, which was delivered to complainant, as one of a syndicate to buy said lots, by a trustee who had received the money from complainant and paid it to the vendor of the lots: "Received * * of the Shelby Iron Works $552.09, it being the one-sixth cash payment of the syndicate purchase for" certain described lots. This receipt was written on a printed blank from which the words "Shelby Iron Works" were inadvertently not stricken out and complainant's name inserted in their stead. *Held:* As between complainant and defendant the mistake in the receipt was obvious and self-corrective; and the receipt is evidence of the payment by complainant of so much of the purchase price of de-

[Homan v. Stewart.]

fendant's lot as was the agreed valuation of complainant's interest in the lots so assigned.

3. *Statute of frauds; a receipt for the payment of purchase money not governed thereby.*—A receipt given to one who pays a part of the purchase money for certain described property, and which is assigned by him to another by indorsing on it, "I hereby transfer my interest in the within described property to" such person, is not within the influence of the statute of frauds; the assignment of such receipt merely authorizing the assignee to take the assignor's place in the purchase of the property.

4. *Specific performance of a contract; within the discretion of the court.*—The granting or withholding of a decree for the specific performance of a contract of sale of land is within the sound judicial discretion of the court, controlled by fixed rules and principles, having reference to the peculiar circumstances of each particular case.

5. *Same; subsequent changes in condition will not prevent enforcement of contract.*—Where a contract is fair and reasonable when it is made, it will not be deemed unconscionable or inequitable in consequence of the happening of unforeseen and unexpected events, since the parties will be presumed to have assumed the risk of subsequent fluctuations in the value of the property and other changes in their condition; and such fluctuation or changes will not prevent the specific enforcement of the contract, provided this change of circumstances is not attributable to the fault or conduct of the party seeking the performance.

6. *Same; when property open to inspection and judgment of both parties.*—When, on a bill filed to enforce the specific execution of a contract for the exchange of lands, it is shown that the contract was fair, and the parties dealt with each other at arms length, each having equal opportunities of inspecting the property and forming his judgment of its value, and that complainant did not practice a fraud or impose upon the defendant, the fact that the complainant asked defendant twice as much for his land as he gave for it, which the latter afterwards found was too high a valuation, furnishes no reason why the defendant should not be decreed to convey his land to complainant, as stipulated in the contract; such a fact furnishing no ground for the repudiation of the contract by defendant, since he risked his own judgment of the value of complainant's land, and contracted accordingly.

7. *Same; contract must be clear and definite.*—To authorize the specific enforcement of a contract for conveyance of lands, the terms of such contract must be so specific and clear, and the description of the property sufficiently definite and certain, as to enable the court to know that it is enforcing the contract the parties made, and which they intended to make.

8. *Same; variance in the description of the property.*—Where in a suit to enforce the specific execution of a contract to convey, the bill describes the property to be conveyed as a certain lot in a certain block,

[Homan v. Stewart.]

and the proof shows that complainant bought only a part of said lot, and it was further shown that the defendant owned only such part in said lot in the designated block, there is not such a fatal variance between the allegations of the bill and the proof as will prevent a decree for specific performance; since the evidence showed with reasonable certainty what property was the subject of the contract, and complainant could be allowed to recover a part only of what he claimed.

APPEAL from the City Court of Anniston, in Equity. Heard before the Hon. JAS. W. LAPSLEY.

The bill in this case was filed on March 4, 1892, by the complainant, D. A. Stewart against Russell Homan; and sought the specific performance of an alleged contract of sale, between the complainant and the defendant. It was averred in the bill, and shown by the evidence of the complainant, that on April 2d, 1890, the complainant, with five others, formed a syndicate, and purchased of the Shelby Manufacturing & Improvement Company, five lots in the town of Shelby, Alabama; that it was agreed among the members of said syndicate, that Ed. T. Witherby, one of their number, should be trustee, and receive from each of said members their share for the cash payment of said lots; that the said Witherby, as trustee, paid the purchase price for said lots, and the company put the purchasers in possession. On the day above stated, the complainant paid his share of the purchase price of said lots, and received from said Witherby a receipt in words and figures as follows: "Received, Shelby, Ala., April 2d, 1890, of the Shelby Iron Company, five hundred and fifty-two and 09-100 dollars, it being the one-sixth cash payment of the syndicate purchase for Lot No. 1, Block 89, Lot 2, Block 89, Lot 2, Block 91, Lot No. 14, Block 92, Lot 30, Block 95. $552.09. Ed. T. Witherby, Trustee." The bill contained this further averment in reference to this receipt: "Orator further avers that said receipt was written on a blank on which was printed the words, 'Shelby Iron Company,' and which words should have been erased, and orator's name substituted, in order to make out the full meaning and intent of said receipt; that it was intended by said Witherby as a receipt for money from orator, and not from the 'Shelby Iron Company,' as it purports on its face; that orator, and not the 'Shelby Iron Company,' paid the said $552.09 to said Witherby, trustee aforesaid."

[Homan v. Stewart.]

It was further averred in the bill that the defendant, being the owner of a certain lot in the city of Anniston, known as lot No. 1 in block 2, which he valued at $1,200, traded said lot to the complainant for his interest in the lots purchased from the Shelby Manufacturing & Improvement Company, which interest was valued at $1,100; that in accordance with the agreement of transfer and sale the complainant paid to the defendant one hundred dollars in cash, and delivered to him the receipt given to said Witherby, with the following endorsement upon it: "I hereby transfer my interest in the within described property to Russell Homan, April 9, 1890. D. A. Stewart;" and that thereupon the said respondent gave to the complainant the following receipt: "Anniston, Ala., April 9, 1890. Received of Dr. D. A. Stewart one hundred dollars in cash, and interest in certain city lots at Shelby, Alabama, valued at eleven hundred dollars ($1,100.00) in consideration for warranty deed of my lot on west side of Wilmer street, between Eleventh and Twelfth streets, and thirty-five feet on Wilmer, and running back one hundred feet to an alley. Russell Homan." The complainant averred in his bill, and testified in his deposition, that upon the delivery of these respective receipts the said respondent placed him in possession of the lot, and agreed to execute to him a warranty deed, conveying the said lot in Anniston. This deed was never executed, and the present bill was filed to compel the execution of said deed to the complainant.

The defense set up by the respondent in his answer, pleas and demurrer is sufficiently stated in the opinion. His testimony as taken by his deposition was in conflict with that of the complainant, to the effect that the respondent testified that the complainant misrepresented to him the value of the lots in Shelby, and that it was upon this misrepresentation the trade was made.

All the other facts of the case are sufficiently stated in the opinion. The chancellor rendered a decree granting the relief prayed for; and this decree is here assigned as error.

J. J. WILLETT, for appellant.—1. In bills for the specific performance of contracts to convey lands, great accuracy of averment and strict corresponding proof are required.—*Daniel v. Collins*, 57 Ala. 625; *Johnston v. Jones*, 85 Ala. 287; *Aday v. Echols*, 18 Ala. 353.

[Homan v. Stewart.]

2. In bills for specific performance of contracts, proof without allegation is as fatal to relief as is allegation without proof, and hence in a suit in equity for the specific performance of a contract for the sale of lands, which, unaided by extraneous evidence, is void for uncertainty in the description, relief can not be granted in the absence of averments identifying the land, though they are sufficiently identified by the proof.—*Meyer Bros.* *v. Mitchell*, 75 Ala. 476.

3. The contract of sale sought to be enforced contains a patent ambiguity. The contract of sale nowhere states in what county, city, state or town said lot is situated. Nor is there anything in the contract itself identifying the lot. Authorities in Alabama seem to be somewhat in conflict upon this question. But it would seem from *Black v. Pratt Coal & C. Co.*, 85 Ala. 504, and *Driggers v. Cassady*, 71 Ala. 530, that this description of the lot was void for uncertainty.

4. This contract can not be enforced because its enforcement would be unjust and would work a great hardship upon appellant.—*Moon v. Crowder*, 72 Ala. 89; *Carlisle v. Carlisle*, 77 Ala. 339; *Nelson v. Shelby Manf'g Co.*, 96 Ala. 515; *Holmes v. Evans*, 48 Miss. 247, s. c. 12 Amer. Rep. 372; *Bowers v. Anderson*, 52 Miss. 596.

McLEOD & TUNSTALL, *contra*.—1. The memorandum of sale being dated Anniston, Ala., the presumption will be the land is situated there.—*Mead v. Parker*, 115 Mass. 110.

2. A contract for the sale of land will not be declared void for uncertainty of description, if by aid of parol evidence of extrinsic facts, the land intended to be conveyed can be located.—*Dorgan v. Weeks*, 86 Ala. 329; *Angel v. Simpson*, 85 Ala. 53; *O'Neal v. Seixas*, 85 Ala. 80; *Meyer v. Mitchell*, 75 Ala. 476.

3. The contract of sale specifying the lot of land as "a lot on the west side of Wilmer street, between 11th and 12th streets, 35 feet on Wilmer and running back 100 feet to an alley," parol evidence is admissible to show that respondent owned a lot on said street, answering the description, and only one lot, and such proof being made, then that cures the defect in the uncertainty in the description of the land, and renders the contract of sale valid.—*Chambers v. Ringstaff*, 69 Ala. 140; *Black v.*

[Homan v. Stewart.]

*Pratt Coal &c. Co.*, 85 Ala. 504; *DeJarnette v. McDaniel*, 93
Ala. 215; *Mead v. Parker*, 115 Mass. 110; *Hurley v. Brown*,
98 Ala. 548.

4. If the memorandum contains the names of the
parties, the subject-matter of the contract, the consider-
ation, and the promise, and leaving nothing open to
future treaty, then the statute of frauds is satisfied.
*Jenkins v. Harrison*, 66 Ala. 345; *Lakeside Land Co. v.
Dromgoole*, 89 Ala. 505; *Lewis v. Wells*, 50 Ala. 198.

5. It matters not what is the nature or character of
the document containing the written statement of the
contract. If the writing is under the hand of the party
sought to be charged, and contains the essentials of the
contract, then the statute of frauds is satisfied.—*Jenkins
v. Harrison*, 66 Ala. 345; *Lakeside L. Co. v. Dromgoole*,
89 Ala. 505.

6. To render a contract for the sale of land void for
false representations, the representation must be false,
the purchaser must be ignorant of its falsity, and he
must rely upon the representation to his injury. The
representation must be as a matter of fact in contra-
distinction to an expression of an opinion.—*Lockwood
v. Fitts*, 90 Ala. 150; *Bradfield v. Elyton L. Co.*, 93 Ala.
527; *Bir. W. & E. Co. v. Elyton L. Co.*, 93 Ala. 549.
An assertion as to the value of real estate is only an
expression of an opinion, and will not render the con-
tract of sale void.—*Lockwood v. Fitts*, 90 Ala. 150.

7. When a contract respecting real estate is in writ-
ing, is certain, fair in all its parts, founded on an ade-
quate consideration, and capable of execution, a specific
performance in a court of equity is as much a matter
of right, as damages for its breach in a court of law.
*Bogan v. Daughdrill*, 51 Ala. 312.

8. It is well settled that mere inadequacy in the
value between the subject-matter and the price, is not
a ground for refusing the remedy of specific perform-
ance.—*S. & N. Ala. R. R. Co. v. H. A. & B. R. R. Co.*,
98 Ala. 400.

HARALSON, J.—The specific performance of the
contract in this case is resisted on the grounds, (1), that
the alleged agreement signed by the respondent for the
alleged sale of said lot of land is too uncertain and in-
definite to be specifically performed; (2), that said agree-

[Homan v. Stewart.]

ment does not state where said lot is situated, and does not sufficiently describe it; (3), that the contract is within the statute of frauds; and, (4), that it is inequitable and unjust, and should not be performed on that account.

1. The contract is dated, "Anniston, Ala., April 9, 1890." The property purchased, the conveyance of which is sought to be enforced, is described in the writing to be, as set out in the bill, "my lot on the west side of Wilmer street, between Eleventh and Twelfth streets, and 35 feet on Wilmer street, running back 100 feet to an alley." With this memorandum of sale, bearing date of execution at Anniston, Alabama, the presumption is that the land sold is situated in that city.—*Mead v. Parker*, 115 Mass. 413, s. c. 15 Am. Rep. 110.

2. The description of the lot in the memorandum is one of those uncertain descriptions which may be aided by parol, and comes within the maxim, "*Id certum est, quod cestum reddi.*"—*Bottoms v. Dykes*, 102 Ala. 582; *Dykes v. Bottoms*, 101 Ala. 390; *Black v. Tenn. C. I. & R. R. Co.*, 93 Ala. 109; *Dorgan v. Weeks*, 86 Ala. 329; *Angel v. Simpson*, 85 Ala. 53; *O'Neal v. Seixas*, 85 Ala. 80; *L. & N. R. Co. v. Boykin*, 76 Ala. 560; *Meyer v. Mitchell*, 75 Ala. 475; *Wilkinson v. Roper*, 74 Ala. 141; *Sykes v. Shows*, 74 Ala. 385; *Chambers v. Ringstaff*, 69 Ala. 140.

3. The memorandum of sale is not within the statute of frauds. As we have heretofore said, "It is to oral evidence of contracts which ought to be reduced to writing, and signed by the party to be charged, and not to written evidence of such contracts, the statute of frauds is directed. Whenever evidence of the contract is found in writing, signed by the party to be charged, which is certain and definite, there is no danger of fraud and perjury, and it is fraud and perjury the statute intends to prevent. The form of the writing is not important, nor are the purposes for which it may have been intended, at all conclusive."—*Jenkins v. Harrison*, 66 Ala. 359; *Carter v. Shorter*, 57 Ala. 256; *Lakeside Land Co. v. Dromgoole*, 89 Ala. 508.

In this contract, the city in which the property is located is definite, the property sold certain,—in that it may be made certain,—the consideration—$1,200— which purports to have been paid in cash, is expressed; the time for its performance was not distant, but presently; the names of the contracting parties are given,

and it was subscribed by the party to be charged therewith, and is, altogether, sufficient.

4.   The receipt of E. T. Witherby, trustee, which was delivered by complainant to the defendant, was assigned by complainant to defendant, as a part consideration,—$1,100,—of the purchase price for the Anniston lot. It is averred in the bill, and shown in the proof, that complainant and not the Shelby Iron Company, paid the amount therein specified to said Witherby ; that said receipt was on a printed blank, in which the words, "Shelby Iron Company," appeared as the payor, and inadvertently, these words were not struck out, and complainant's name, instead, inserted. It was indorsed : "I hereby transfer my interest in the within described property to Russell Homan," dated, signed by complainant, and delivered to defendant, at the time he gave complainant his memorandum of sale.

As between the complainant and defendant the mistake of the receipt, in not containing complainant's name in place of that of the Shelby Iron Co., is obvious and, under the evidence, self-corrective.

It is said this paper is void under the statute of frauds, but, it occurs to us, that that statute has nothing to do with it.   It is not a contract to convey land, but is simply a receipt for so much money, paid by the complainant to one, of a half hozen purchasers of several lots of land, who agreed,—himself being one of the number,—to represent the others, in receiving their money and paying it over on the purchase they had jointly made of the lots, and procuring a deed to the purchasers.   The paper evidenced the fact, that complainant had paid his share of purchase money to the common agent of the buyer or syndicate,—as they are called in the pleadings,—and when complainant assigned said receipt to defendant, he merely authorized him to take his place in that purchase.   So far as the receipt goes, or has any bearing on this case, it is evidence between the parties, that complainant paid $1,100 of the purchase price of the lot he bought from the defendant, by tranferring to him this paper.   It is altogether a different instrument from the one which was considered in the case of *Nelson v. Shelby Manufacturing Co.*, 96 Ala. 515, to which we have been referred by counsel.

5.   The court exercises discretion in granting or with-

holding a decree of specific performance, neither party being entitled to it as a matter of right. It is not a discretion which will be arbitrarily or capriciously exercised, but a sound, judicial discretion, controlled by fixed rules and principles, in view of the special features and incidents of each case.—Waterman on Specific Performances, § 6; Pomeroy on Contracts, § 35; 3 Brick. Dig., 361, § 415.

The court will look at the contract itself, to see if it is unfair, unconscionable, or affected with any other such inequitable feature. If oppressive, and will work great injustice, the court will not enforce it.—Pomeroy on Contracts, § 175; *Moon v. Crowder*, 72 Ala. 89; *Irwin v. Bailey*, 72 Ala. 467; *Carlisle v. Carlisle*, 77 Ala. 339; *Ellis v. Burden*, 1 Ala. 458.

Story lays down the rule, that if the character and condition of the property, to which the contract is attached, have been so altered that the terms and conditions of it are no longer applicable to the existing state of things, a court of equity will not grant any relief, but will leave the parties to their remedy at law; that where, from a change of circumstances, it would be unconscientious, or inequitable under all the circumstances to enforce it, the court will not do so.—1 Story Eq. Juris., §§ 750, 750a, 769.

Mr. Waterman states the rule to be, that, if the contract was fair when it was entered into, it will not be deemed otherwise in consequence of the happening of unforseen and unexpected events afterwards, and if the contract was a reasonable and fair one, the parties will be considered as having taken upon themselves the risk of subsequent fluctuations in the value of the property, and such fluctuations are not allowed to prevent its specific performance.—Waterman on Specific Performance, § 165. This rule is approved by Mr. Fry and Mr. Pomeroy, with the modification, that if these subsequent changes of circumstances have been, in some way, due to the conduct of the party who seeks the performance, it will not be enforced.—Fry on Specific Performance, § 252; Pomeroy on Contracts, §§ 177, 178; Leading Cases in Equity, 1038. The rule stated by Mr. Waterman and the authorities last referred to, we approve as being sound and more consonant with equity, than as stated by Judge Story.

There was no unfairness, imposition or fraud, as far as appears, practiced by complainant on defendant. The contract was a fair one, in that the parties traded at arms length; they were each engaged in a speculative venture; it was a "heads and tails" business; each examined the property of the other; each had equal opportunities of forming his judgment and descrying the future; the complainant and his associates had faith in the city of Shelby, on paper; they invested their money in some of its lots; the complainant asked the defendant a hundred per cent. on his investment, which, according to the history of such enterprises, was not an extraordinary appreciation in price, and the defendant risked his judgment and bought. If things had gone as he anticipated, and in a short while he could have realized a large profit, as many investors in such coming cities did, and the tide had not rolled back on him, we would not, in all probability, have heard of this suit. Two months afterwards, he returned the Witherby receipt, which had been transferred to him, and authorized complainant to draw on him for $100, the amount of money complainant had paid him in cash in the trade, besides the $1,100 represented by said receipt. In returning said paper, and repudiating his contract, it must be noticed, that he based his repudiation, on the alleged ground that the land complainant proposed to trade to him, he found on investigation to be worth less than represented, and for the further reason, that the receipt for it recited, "Received from the Shelby Iron Co.," instead of from himself, complainant, and that he understood complainant had no interest in the Shelby Iron Co. As we have seen, such an excuse as the last stated could not, as between the parties, be fairly set up. It was not shown or attempted to be shown, that complainant did not have such an interest in the Shelby lots as he represented and transferred, or that the defendant was ever, for any reason, denied such an interest in that purchase. Again, the fact must not be overlooked, that if complainant had not sold to defendant, he might, for aught appearing, have made a profit by selling to some one else, which he could not do, at least before defendant repudiated the contract, and this may have been too late. And of the value of the land, it must be held, defendant was as competent to judge as complainant.

6.   It has been said that the contract, of which a performance is sought, must be clearly alleged and proved and its terms must be so specific and distinct as to leave no reasonable doubt of their meaning.   The jurisdiction to enforce specific performance is cautiously and carefully exercised, and the court must clearly see that it is enforcing the contract the parties made, of which the pleadings must give distinct information, and not a contract which it may make for them in the solution of vague, uncertain, doubtful and conflicting testimony.—— *Bogan v. Daughdrill*, 51 Ala. 314; *Daniel v. Collins*, 57 Ala. 627 ; *Johnson v. Jones*, 85 Ala. 287 ; 1 Brick. Dig., 692, § § 768, 769.

7.   In sections four and five of the bill, the lot alleged to have been purchased by complainant from defendant is described as "lot 21 in Block 2 in the city of Anniston."   In section 8, a particular description of said lot is attempted, as "lot No. twenty-one (21) in Block No. (2), as shown by the map of the Anniston City Land Company, beginning at a point on the west line of Wilmer street, one hundred and five feet (105 ft.) from the northwest corner of the intersection of Wilmer and Eleventh streets, and running west parallel with Eleventh street, one hundred (100) feet ; thence north, thirty-five (35) feet ; thence east, one hundred (100) feet to the west line of Wilmer street ; thence south thirty-five (35) feet, to point of beginning."   The description is accurate in the general, as constituting a certain number in a certain block, according to a certain map, and particular, as it gives the metes and bounds.   The proofs show, without conflict, that the space of ground described by metes and bounds, constitutes a part only, of lot 21 in Block 2 referred to in the general description ; but, as to this, the general will yield to the more particular description.—*Sikes v. Shows*, 74 Ala. 382 ; 1 Greenl. Ev., 301, n. 2 ; 2-Devlin on Deeds, §§ 1020, 1039.

The complainant's proof in identification of the particular lot sold, is, that the defendant told him that he did not own any other lot, than the one shown complainant, on which they stood, when the trade was made ; that complainant fully believed lot 21 in Block 2 in the city of Anniston to be the description of the identical lot that was traded to him by defendant, and he adds :   "As nearly as I can describe the lot, it was 35 feet wide, and

105 *feet deep*, and fronted on Wilmer street from the west, between 11th and 12th streets. I think it was nearer to the south than the north line of the block. It was directly north of quite a large building that I think was built of brick. I believe there was an alley between the large building and the lot."

8. The criticism that there is a discrepancy between the pleadings and the proofs, as to the subject matter of the sale, is more apparent than real. A plaintiff may be permitted to recover a part only of what he claims. The allegation is, that the property complainant purchased was lot 21 in Block 2, in the city of Anniston. The proof shows that it was only a part of that lot he bought, 35 feet wide, fronting on Wilmer street, by 105 feet deep, and between 11th and 12th streets. It also shows that defendant owned no other lot in lot 21, Block 2, than the one he contracted to sell to complainant. Thus aided, we are made reasonably certain of the property, the subject of the contract of sale, and that the contract is not incapable of execution for any uncertainty of the description of the property sold.

The decree of the chancellor ordered a conveyance from defendant to complainant in the terms of the contract, and when executed, the defendant will be certain that he has no further interest in lot 21, Block 2, in Anniston, and the complainant will have no difficulty in locating his claim without interference with the rights of any other person.—*Bogan v. Daughdrill*, 51 Ala. 316; *Chambers v. Ringstaff*, 69 Ala. 146.

There is no error in the decree of the chancellor, and it is affirmed.

Affirmed.