147 So. 667

**BIRMINGHAM ICE & COLD STORAGE CO.**
**v. JOHNSON et al.**
**3 Div. 35.**

Supreme Court of Alabama.
Jan. 19, 1933.

Rehearing Denied May 4, 1933.

Rushton, Crenshaw & Rushton, of Montgomery, for appellant.

Hill, Hill, Whiting, Thomas & Rives, of Montgomery, and Stokely, Scrivner, Dominick & Smith, of Birmingham, for appellees.

BOULDIN, Justice.

The bill is for the specific performance of the renewal provisions of a lease of real estate. Complainant is the lessor, or one claiming to have succeeded to the position of lessor, with all its rights and equities:

The appeal is from a decree sustaining a demurrer to the bill as amended.

In the view we take of the case, the determining facts set forth in the bill are these:

In 1927 the lessor and lessee entered into a contract in writing under which the lessor should erect a building of agreed specifications on a lot owned by the lessor in Birmingham, and on its completion the lessee should take a lease for the term of five years.

This contract stipulated:

"(2) Upon completion of said building, the parties of the second part will make and enter into lease with the party of the first part for a term expiring September 30th, 1932, in words and figures as per copy of proposed lease attached hereto and made a part hereof as fully as if set out herein, except that the annual rental to be specified and set forth in said lease when entered into shall be fixed and determined by taking 5% of Seventy-Five Thousand Dollars ($75,000), which is the agreed value of the land hereinabove described, plus an additional 10% of the total cost of said building, not exceeding 10% of Forty-Four Thousand Dollars ($44,000). Said lease shall be entered into and shall become effective and rent shall be payable from the time said building is completed and ready for occupancy, which shall not be later than October 1st, 1927, but may be at an earlier date, and shall extend for a period of five years from October 1st, 1927. * * *

"(4) Upon completion of said building, each of the undersigned parties hereto will be bound in all respects as lessor and lessee, respectively, whether or not the form of lease hereto attached shall have been executed by all or any of the parties hereto, and this agreement shall be binding upon the parties hereto, their heirs, administrators, successors and assigns."

A signed copy of the form of lease was attached, leaving the figures blank, to be ascertained according to the contract.

The lease contained the following renewal provisions: "The Lessor will, not sooner than twelve months and not later than eight months prior to the expiration of this lease, cause the land covered hereby to be appraised by the Birmingham Real Estate Board, and will fix a rental for a five year term following the expiration of this lease on the basis of 5% per annum of such appraised value of said land and 10% per annum of the original cost of the improvement thereon. The Lessor will submit in writing to the lessee such appraisal and figures showing such new rental basis not later than eight months before the expiration of this lease, and lessee shall, within thirty days thereafter, signify in writing to the lessor, its willingness or unwillingness to enter into a new lease for an additional term of five years on such new rental basis. If Lessee within such period signifies its willingness, a new lease will forthwith be entered into identical in all respects with the foregoing lease, except as to dates and rent reserved, such new lease to cover an additional period of five years. If Lessee signifies its unwillingness to make such new lease, Lessor shall have thirty days thereafter in which to negotiate a new lease on said premises with another tenant or tenants at such new rental rate, but lessor shall not enter into lease on said premises at such new rental rate with any other tenant within said thirty day period without first giving the lessee the right or option of taking new lease on said premises at the highest rental which may be offered to lessor by any tenant or tenants. If the lessee herein named fails or refuses after five days' notice, to enter into such new lease on said premises at the rental offered to the lessor by other tenant or tenants, the lessor shall have the right forthwith to enter into lease with such other tenant or tenants. The lessor shall nevertheless have the right and option at any time before the expiration of thirty days following written notice from lessee of its unwillingness to take new lease at such new rental to require lessee to enter into new lease for such additional period of five years at the same rental and on the same terms fixed in the above and foregoing lease, it being intended that following such appraisal and written notice of the result thereof, the lessee shall have thirty days in which to elect to make new lease for five years at such increased rental, and that, in the event of lessee's failure to so elect, the lessor shall have thirty days thereafter in which to attempt to lease said premises to another tenant or tenants at such new rental rate, and that lessee shall, during said second period of thirty days, have the right or option of making new lease on said premises at whatever rental rate may be offered the lessor by other tenant or tenants, and that the lessor shall in any event within the said second period of thirty days have the right and option of requiring lessee to re-lease said premises for said additional period of five years at a rate of rental the same as that hereinabove set forth."

The building was erected, the lessee went into possession, and so continued during the

five-year period on a rental basis of $8,150 per annum, being 5 per cent. on $75,000, the value of the lands, and 10 per cent. of $44,000, the cost of the building, as stipulated in the contract.

In due time before the expiration of the original lease, the lessor caused the land to be appraised by the Birmingham real estate board, which board valued the land at $45,000. The lessor reported this appraisal, and called upon the lessee to signify willingness or unwillingness to enter into a new lease on the new rental basis, viz., 5 per cent. on $45,000, the value of the land, plus 10 per cent. on $44,000, the cost of the building, being an annual rental of $6,650.

The lessee had theretofore advised the owner of a purpose not to renew, and in due time declined to renew on the new rental basis thus tendered. Thereupon, in due time, the lessor tendered and demanded the execution of a new lease for five years, on the original rental basis of $8,150. This being declined, specific performance is sought in line with this proposed new lease.

We consider, first, the grounds of demurrer going to the equity of the bill upon a consideration of the contract itself.

A study of the renewal covenant discloses its construction is not free from uncertainty.

One thing is clear: The parties first fixed a basis of rental value, 5 per cent. of the land value, and 10 per cent. of the cost of building, and set up a board of appraisal to ascertain the fair rental value on such basis as of the date of renewal. This basis of rental value was the same in the original and in the renewal covenant; the variable factor being an anticipated change of land values. We may take it both parties considered this a fair measure of rental value, and any construction which would force a renewal upon a higher or lower basis is out of keeping with this feature of the covenant.

The lessor, in proceeding under the covenant, manifestly construed it as giving the lessee the first option to take a new lease on the new appraisal, whether higher or lower than the original; and accordingly tendered a new lease for execution on such reduced basis that the lessee might exercise such option to renew or not to renew. This procedure further recognized that the right of the lessor to require a renewal at the original rental price was conditioned on a first option in the lessee to take at the new price. By express provision the last option in favor of the lessor arose only during the second thirty days; the thirty-day period following the exercise by the lessee of his option not to renew on the new appraisal basis.

Now, if we construe the last option as giving the lessor a right to demand a renewal on the original basis, regardless of present rental value, as determined by appraisal, we virtually nullify the option first given the lessee.

No one can be said to have an option to renew or not to renew at a given price, if he is still bound to renew at the same price, much less at a price more than 20 per cent. higher than the option he is supposed to have.

In a sense, this higher figure would be in the nature of a penalty for exercising an option written into the contract. Business men can hardly be supposed to have had in mind any such result.

Another construction, probably the correct one, is to regard the entire subject-matter of the renewal covenant as relating to an anticipated rise in rental values.

The covenant has an interpretative clause purporting to clarify the intent of the renewal covenant. The first statement of this interpretative clause reads: " * * * It being intended that following such appraisal and written notice of the result thereof, the lessee shall have thirty days in which to elect to make new lease for five years at *such increased rental.*" (Italics supplied.)

Reading these italicized words into the first option clarifies and renders reasonable and consistent all the later stipulations.

On the election of the lessee not to renew at the *increased rental* shown by the new appraisal, then the lessor may seek another tenant who will take it at such price, or at any rate higher than the original, and, after giving the lessee the option to meet such outside offer, or, perhaps, without seeking any outside tenant, the lessor may require a renewal at the old basis, which, in the circumstances, can only be a lower basis than that which the lessee had an option to accept or reject.

We should keep in mind again that this latter option arises only after an election by the lessee not to take at the new price, an increased rental price, if we follow the interpretative clause.

In this view, clearly the lessor has no such right to the specific performance sought in the bill. In any event, there is such uncertainty or inequity in the construction insisted upon by complainant that equity will not grant the relief sought. Other questions need not be considered.

Affirmed.

ANDERSON, C. J., and GARDNER and FOSTER, JJ., concur.

On Rehearing.

PER CURIAM.

Application for rehearing overruled.

All the Justices concur, except GARDNER, J., who dissents.

GARDNER, Justice (dissenting).

Following the various stipulations as to the renewal of the lease and concluding the whole matter is the provision: "And that the lessor shall in any event within the said second period of thirty days have the right and option of requiring lessee to release said premises for said additional period of five years at a rate of rental the same as that hereinabove set forth." The words "in any event" are here properly to be interpreted as meaning "whatever may happen." 4 Words and Phrases, Third Series, p. 117.

It is clear, therefore, that the language of the lease contract discloses an intention of the parties that the lessors have the right to require a renewal on the same basis as the original lease "whatever may happen."

The decision, in effect, nullifies this right, and appears to be rested upon the theory that, as changed economic conditions have lowered the rental value, it would be inequitable to enforce it, or that its provisions are inconsistent with options previously granted the lessees. That the contract was fair and just when entered into does not admit of controversy.

The rule adopted in this state is that, if a contract at the time of execution was reasonable and fair, the court, in the exercise of its discretion, which is judicial and not personal, will not look to changed circumstances, unless they have been brought about by the party seeking enforcement. Homan v. Stewart, 103 Ala. 644, 16 So. 35; Blackburn v. McLaughlin, 202 Ala. 434, 80 So. 818.

I am persuaded the prevailing opinion runs counter to this salutary and well-established rule, and respectfully dissent.