# Richmond.

## CASTLEMAN'S ADM'R AND ALS V. DORSEY AND ALS.

### January 24th, 1884.

EQUITABLE JURISDICTION AND RELIEF—*Personal representatives—Staleness of demand—Case at bar.*—S and wife by deed, in 1839, conveyed to C certain land with the usual covenants of title. At C's death, in 1842, two bonds for part of the purchase-money were unpaid. C's administrator made five settlements (which were all approved and recorded, the last in 1852), in four of which it is mentioned that these bonds were not paid on account of defect of title to the land, and that adm'r retained funds to meet them. In 1877 suit was brought against C's adm'r and his sureties by the distributees of C, who, and his heirs, had enjoyed undisturbed possession of the land, for final settlement of administration, including the funds retained to pay the bonds due S, and for distribution. In the bill there was no allegation of breach of the conditions of the administration bond, or any of *devastavit.* Demurrer was filed to the bill and its demand resisted as stale and as barred.

HELD:

1. The bill should be dismissed for want of equity on its face.
2. The laches of the distributees, in delaying their demand, affords strong presumption, unrepelled by proof, that it has no foundation in justice, and had been abandoned.
3. The plea of the statute of limitations as a bar to demand against the sureties should be sustained.

Appeal of John T. Crow, sheriff of Clarke county, and as such administrator of Alfred Castleman, deceased, Champ Shepherd, executor of Joseph Shepherd, deceased, R. R. Smith and Charles H. Smith, executors of Treadwell Smith, deceased, and Marshall McCormick, administrator c. t. a. of William D. McGuire, deceased, from decree of circuit court of said county, rendered 3d June, 1882, in

the cause of Amanda Dorsey and others, distributees of William Castleman, deceased, against the appellants and others. Argued at Staunton and decided at Richmond.

Opinion states the case.

*Parker & McCormick, Holmes Conrad* and *McDonald & Moore*, for the appellants.

*Samuel J. C. Moore*, for the appellees.

FAUNTLEROY, J., delivered the opinion of the court.

William Castleman died in the year 1842. His son, William A. Castleman, qualified as his administrator before the county court of Clarke county, Virginia, on the 25th of April, 1842, giving his official bond as such, in the penalty of $73,000.00, with Joseph Shepherd, Alfred Castleman, P. D. Shepherd, Treadwell Smith and William D. McGuire, as his sureties. One of them, P. D. Shepherd, was adjudged a bankrupt, and they are all dead; and the appellants are the personal representatives of the other sureties in the said bond.

John Ship and wife, by deed dated October 31st, 1839, conveyed a certain tract of land, part of a larger tract of land in Clarke county, Va., to said William Castleman. The portion conveyed by this deed was about 288 acres, being the tract on which the said John Ship then resided. James T. Ship, to whom John Ship had conveyed the other portion of this tract, and wife conveyed the residue of said tract, about 228 acres, to the said William Castleman, by deed dated 15th October, 1839. Both of these deeds contain covenants of *seizin, good right to convey,* and of *general warranty.* The Ships, grantors in these deeds, were in the actual occupation and enjoyment of these lands when they conveyed them, in 1839, to said William Castle-

man, who, during his lifetime, and his children and their vendees, have been and are up to this day, uninterruptedly in the actual possession, occupation, use and enjoyment of these lands ever since the said date of these deeds in October, 1839.

There is no evidence in this record that there was any precedent or collateral contract between the vendors of said land (the Ships) and the vendee (the said Castleman), respecting the land, or any other than the aforesaid covenants in the said deeds contained and expressed.

Upon the death of William Castleman, in 1842, there remained of purchase money unpaid two bonds of the said William Castleman, one for $1,666.67, due to James T. Ship on January 1st, 1842, and the other to John Ship, for $1,630.09½ cents, on January 1st, 1843.

The bond due to John Ship, with its interest, was fully paid by the administrator of the said William Castleman, William A. Castleman, in 1854, to B. H. Shackelford, administrator of John Ship, upon the execution, by said Shackelford, of bond, with ample security, to indemnify the estate of William Castleman in the event of eviction "by title paramount to the said Ships."

Upon the bond due to James T. Ship a chancery suit was instituted in the circuit court of Clarke county, in 1871, by the sheriff of Madison county, Virginia, committee administrator of James T. Ship, in which he sought to recover the amount of said bond from the official sureties of said William A. Castleman, administrator of William Castleman. In that suit, the record of which is made part of the record in the case at bar, the court, by its order of the 4th June, 1874, sustained the demurrer to the bill, and, "being of opinion that there is no cause of action in this form (*forum*) against the defendants," dimissed the bill.

William A. Castleman, as administrator of his father, William Castleman, deceased, made five settlements of

his administration accounts, respectively, in the years 1844, '46, '48, '50 and '52.  They were all returned to the county court by the commissioner who had been appointed by the court to make them, and by the said court they were approved and ordered to be recorded.  In the first of these settlements reference is made to these two unpaid Ship bonds as follows: "These are bonds of William Castleman, deceased, to John Ship to the amount, with interest, of $4,014.41, which the administrator has not paid, for defect in title to lands, and which he ought to hold funds to meet hereafter."  In the next settlement they are referred to in the words of the commissioner: "The administrator retains in his hands to meet an outstanding claim, *due to John Ship,* the sum of $4,117.12."

In the third settlement the commissioner makes the following: "Note—The administrator retained in his hands, since the last settlement, the sum of $4,117.12 to meet certain bonds of the intestate to John Ship *for purchase of land,* the title to which is not entirely clear; he represents to the commissioner that the matter still remains unsettled, and that he has loaned out the funds.  The amount in principal is $3,614.41, and interest $502.71."

In the fourth settlement this Ship fund is referred to as follows, viz: "There being some obstruction to a clear title to a part of the land, the said sum is yet retained by the administrator."

In the fifth and last settlement no reference is made to this Ship fund.

These settlements show that the administrator settled his administration accounts every two years, as required by the court, and that he had administered all the assets that had come into his hands, paying the debts of the estate and distributing large surpluses from time to time amongst the distributees; that the only debts against the estate remaining unpaid was that due to the Ships and a.

small debt to one Williams, the money to pay both of which was retained by him, with the sanction of the court.

At the January rules, 1877, the bill in this suit was filed. William A. Castleman, administrator of William Castleman, deceased, and the personal representatives of the sureties then dead, and William D. McGuire and Alfred Castleman, the other sureties then living (now dead), filed their answers.

There was an order of reference to master commissioner Louthan to take certain accounts, which he executed and returned his report. Soon after the said report the papers in the cause were lost, and have not been found.

At April rules, 1879, the complainants filed what is called in the record their "supplemental and substituted bill," the main purposes of which was to set up the original record.

The purpose of the original bill was to obtain a final settlement of the accounts of the administrator, William A. Castleman, of William Castleman, deceased, and for distribution and a decree against the said administrator and his sureties for the amounts found due from him, and to bring into the final settlement all the balances appearing by the *ex parte* settlements, either for or against the complainants; and also to correct an alleged mistake in the second settlement against Mrs. Castleman, the widow of William Castleman, deceased, of $264.33, with its interest.

The bill claimed that the Ship fund was subject to distribution amongst the distributees of the estate of William Castleman; and it prayed that it might be brought into a final settlement, and be decreed to be paid to the complainants. To this amended and substituted bill the personal representatives of the sureties of the administrator filed, severally, their answers, in which they set up the *laches* of the complainants; the want of equity apparent on the face of the bill; the statute of limitations, and all

presumptions of a court of equity of waiver or abandonment of a stale claim. And they denied that the complainants ever had, or could have, a claim or right in law or equity to both the land of their ancestor, William Castleman, and to the Ship fund, at the same time, without any breach of the covenants contained in the deeds for the land held by their ancestor, and by them, as his heirs, without question or disturbance for 38 years.

Upon these facts and pleadings the court, on June 3d, 1882, rendered its decree, holding the administrator, William A. Castleman, and his sureties, liable for the amount retained in his hands " to meet the contingent liability to Ship's estate, viz: the sum of $4,117.12, with interest at the rate of six per centum per annum, from April 22d, 1846, until paid, as to which the plea of the statute of limitations is overruled," and sustained the said plea as to the several balances appearing against the administrator due to the complainants, as distributees, in the several *ex parte* settlements. We think that the bill should have been dismissed, on demurrer, for want of equity apparent on its face ; and that the plea of the statute of limitations should have been sustained, not only as to the balances appearing from the *ex parte* settlements to be due to and from the distributees, but also as to the amount retained by the administrator, under the order of the county court of Clarke county, for the Ships.

The bill prays for a resettlement and a final settlement of the accounts of the administrator, which were stated and settled by him regularly every two years from the date of his qualification in 1842 up to the 22d November, 1852, and which were duly reported to the court by the master commissioner, and approved and recorded by the court. So far as it appears to the contrary, either by allegation or proof in the record, the five regular *ex parte* settlements exhibited with the bill (the last being in 1852)

embraced all the assets of the intestate which ever came, or should have come, to the hands of the administrator. There is no allegation in the bill, or proof in the cause, that there ever was any estate of William Castleman to be administered after the date of this last settlement; yet the bill of complainants asks the court to require the administrator to resettle his accounts after the lapse of more than twenty-five years, without any reason or explanation alleged for this extraordinary delay. So far as it appears in the record it is presumable that all the parties interested in the distributions ascertained and made by these five, regular and duly reported, approved and recorded settlements, were, at the date of said settlements, of full age and capacity to assert their rights of action then and thereby accrued. The balances were trivial in amounts, and were, as often as otherwise, actually in favor of the administrator; and this very fact, apparent on the face of these settlements, may account for the non-action or delay of these co-distributees for nearly thirty years in asserting their claims. However this may be, in point of fact, it is the well-settled principle and practice of courts of equity to refuse relief to parties seeking to enforce stale claims and demands long deferred, as in this case, when more than a quarter of a century has passed; the original parties in interest, the witnesses, and the commissioner who settled the accounts, are all dead; the written evidences all lost with the papers of the cause, and the aged fiduciary himself, whose prompt and regular settlements for ten years attest his fidelity, has, by the ravages of time and war, lost all his property and information and means of defence against the demand set up in this suit, for the first time in nearly thirty years, and which must fall, if allowed, upon the widow and children and grandchildren of the innocent sureties in his official bond. In the case of *Badger* v. *Badger*, 2d Wall. U. S. p. 95, the court said: "The com-

plainants should set forth in their bill what were the impediments to an earlier prosecution of their claim." And this court, in the case of *Hillis* v. *Hamilton's Administrator et als.*, 10 Gratt. p. 300, said (Judge Samuels delivering the opinion of the court): "Adhering to the decisions of this court, and approving the reasons upon which they are founded, in the cases of *Todd and Wife* v. *Moore's Adm'r*, 1 Leigh, 457; *Carr's Adm'r, &c.* v. *Chapman's Legatees*, 5 Leigh, 164, I am of opinion to reverse the decree and dismiss the bill, because of the staleness of the demand asserted. If anything further were needed to justify this conclusion, it would be found in the presumption that complainants' demand has been already paid. The lapse of more than *twenty years*, of itself, affords the presumption, which stands for full proof, unless repelled by other evidence." In the case at bar, while there is the most striking and remarkable similarity to the facts and circumstances of the case of Hillis v. Hamilton's Adm'r and others, just cited, yet this case is a much stronger case of laches and unconscionable delay, affording the strong presumption which, unrepelled, amounts to proof that the complainants regarded the claim as having no foundation in justice and equity, and which, for this reason, they had wholly abandoned.

We have already said that the demurrer to the bill should have been sustained and the bill dismissed as to the demand made for the Ship fund of $4,117.12. There is no allegation in the bill of any breach of any of the conditions of the administration bond; nor is there anywhere either allegation or proof of breach of covenants of title and warranty in the deeds from the Ships to William Castleman, under which both he and his children and their vendees have held and enjoyed undisturbed, unmenaced, and now unassailable possession and title to the lands conveyed ever since 1839.

We are utterly at a loss to conceive by what rule of law or logic, or equity, or good conscience, the heirs of William Castleman, or the distributees of his estate (who are the appellees here), can claim to hold both the land descended from their ancestor, and to demand the money due by the purchase money bond of that ancestor to the Ships for the land itself. The bond on its face is unconditional, and expresses that it is for money to be paid by William Castleman to Ship for land sold and conveyed to him—and now held and enjoyed by the complainants in this suit, and the master commissioner, in his report of the settlement of the administrator's accounts, says: "The sum of $4,117.12 is held by the administrator to meet certain bonds of the intestate to John Ship, still outstanding." If Ship may have lost his money in the hands of this administrator of William Castleman, deceased, or as, in fact, it appears by the record, loaned out by the order of the county court of Clarke, by lapse of time, or by the desolating sweep of war; by what right do the complainants, who are William Castleman's heirs and distributees, in full possession and enjoyment of John Ship's land sold to William Castleman, demand a court of conscience to decree to them John Ship's money due for this land?

We are of opinion that the decree of the circuit court of Clarke county complained of is erroneous, and must be reversed and annulled.

The decree was as follows:

This day came again the parties by their counsel, and the court, having maturely considered the transcript of the record of the decree aforesaid, and the arguments of counsel, is of opinion, for reasons stated in writing and filed with the record, that the said decree is erroneous. It is therefore decreed and ordered that the same be reversed

and annulled, and that the appellees pay to the appellants their costs by them expended in the prosecution of their appeal and *supersedeas* here.

And this court, proceeding to render such decree as the said circuit court ought to have rendered, it is decreed and ordered that the plaintiff's bill be dismissed and that the said plaintiffs, in the circuit court, pay to the defendants their costs by them expended in said circuit court, as taxed by said circuit court; which is ordered to be certified to the said circuit court of the county of Clarke.

DECREE REVERSED.