# Rives v. Morris et al.

| 108 | 527 |
| 124 | 156 |

*Bill in Equity Against Sureties of Deceased Executor, to Compel a Statement and Settlement of his Accounts.*

1. *Equity; laches.*—Where, from delay, any conclusion the court may arrive at must at best be conjectural, and the original transactions have become so obscured by lapse of time, loss of evidence, and death of parties as to render it difficult if not impossible to do justice, the complainant will by his *laches* be precluded from relief; and it is not even necessary that the court should be satisfied that the original claim was unjust, or has been satisfied. And this is true even though the demand is not barred by the statute of limitations, nor under the ban of the doctrine of prescription.

APPEAL from Montgomery Chancery Court.
Heard before Hon. J. N WILLIAMS.
The facts of this case are fully set out in the opinion.

W. A. GUNTER and D. T. BLAKEY, for appellants. Laches cannot be imputed unless twenty years had elapsed between the last settlement of Holmes and the filing of the bill.—*Harrison v. Heflin*, 54 Ala. 556. As the defendants confessed that they were accounting parties, and as evidence is inadmissible on the consideration in the first instance, of the equity of a bill for the settlement of a trust, the lower court erred in dismissing the bill on the hearing.—*Walker v. Woodward*, 1 Russell, 110 ; Gres. Eq. Ev. 503 ; *Teague v. Corbett*, 57 Ala. 538.

TOMPKINS & TROY. *contra.*—The complainants were barred of relief by their *laches.*—*McKnight v. Taylor*, 1 How. 161 ; *Hayward v. Bank*, 96 U. S. 611 ; *McQuiddy v Ware*, 20 Wall. 14 ; *Parker v. Winnipisceogee*, 95 U. S. 157 ; 3 Brick. Dig., p. 366, sec. 463.

McCLELLAN, J.—The bill in this case is exhibited by Mary W. Rives, S. L. Alexander and the children of said Alexander by Annie Alexander, formerly Annie Bunting, against Josiah Morris and William C. Ray as sureties on the bond of George Holmes as executor of the last will and testament of Henry Holmes, deceased.

[Rives v. Morris *et al.*]

The complainants are, or stand in succession to, original devisees and legatees named in said will, and they are also the heirs-at-law of Annie Holmes, who was the wife of said Henry and survived him for a number of years, and who was also a legatee under his will. The object of the bill is to have an accounting and settlement by said sureties, the executor having died, of George Holmes' administration of the estate of the testator, both in respect of the direct interests of the complainants therein and also in respect of the legacies to Anna Holmes, to whose rights they have succeeded as her heirs-at-law. There were demurrers, pleas and answers by the respondents, testimony was taken, the cause was submitted for final decree on the evidence, as also upon a motion to dismiss the bill for want of equity, and at the hearing the bill was dismissed. From that decree this appeal is prosecuted. The case thus presented for our review may be further summarized as follows: Henry Holmes died in 1866, leaving a considerable estate, all which he disposed of by will to his widow, Anna Holmes, his son, George Holmes, his daughter, Mary W. Rives, and his grand-daughter, Annie Bunting. The latter afterwards married S. L. Alexander, one of the complainants, and became by him the mother of the minor complainants, and died before the commencement of this suit. To Mrs. Anna Holmes the testator devised and bequeathed a life estate in certain lands, a large amount of personal property and $20,000 in money. To Mrs. Rives he gave $12,000 in money, $5,000 in the stock of a railway company, lands and chattels. To his grand-daughter he devised certain lands. To George he devised the remainder in the land devised to Mrs. Holmes for life. And then made his son and daughter and grand-daughter his residuary devisees and legatees, the latter receiving one-fourth, and the first two referred to each receiving one-half, of the remaining three-fourths of the estate. George was named as executor and qualified as such early in the year 1867, Mrs. Anna Holmes and the defendants, Josiah Morris and William C. Ray, becoming sureties on his bond in the sum of $270,000, and entered upon the execution of the will. It is shown that he made a partial settlement of the estate in the probate court on November 30, 1875, when he had received of the assets of the estate the sum of $71,489.78,

[Rives v. Morris *et al.*]

and had paid out the sum of $4,733.50, leaving a balance then in his hands of $66,756.28. It does not appear that any subsequent, or indeed any other, settlement was made in the probate court. It is shown affirmatively that he paid the pecuniary legacies, amounting to $12,000, to Mrs. Rives in full during the years from 1869 to 1877, and that in 1875-76 he paid to S. L. Alexander, as husband and trustee of Annie Alexander, *nee* Bunting, out of the estate, $17,682.50. There is evidence of statements and admissions on the parts of both Mrs. Rives and S. L. Alexander that the executor had settled in full with them for the interests owned or represented by them in the estate. Alexander, himself a complainant in the present bill, is not examined as a witness to deny these admissions or to gainsay their truth, and Mrs. Rives, who was examined, testified that she "did not know whether she had ever received her full share of her father's estate or not." Mrs. Anna Holmes, who only besides George knew whether the latter had settled with her, or to what extent he had failed to do so, died in 1885. George, who knew all the facts, died in 1889, shortly before the filing of this bill. And Mrs. Alexander, who, it is to be presumed, knew whether the executor had fully settled with her, died in 1890 only a few months before the filing of this bill. There is evidence that the sureties were given to understand years ago that the estate had been settled, and it is not to be presumed that they knew personally whether it had been or not, or the state of the accounts. One of them, Josiah Morris, has died since the bill was filed. The bill was filed August 20, 1890.

The demand made by the bill for an accounting and settlement is not barred by any statute of limitations. Nor has it passed under the ban of the doctrine of prescription in consequence of the lapse of twenty years, for it was not twenty years from the date of the partial settlement in the probate court to time of bill filed. Nor, indeed, has the mere delay in bringing forward the demand, in and of itself, been sufficient to render it a stale demand. But, in our opinion, the delay, the circumstances attending and characterizing it, the altered conditions surrounding the parties at the time of bill filed and now, and the consequent uncertainty that the court will ever be able to decree a just accounting, the uncer

34

tainty, which can now never be satisfactorily resolved, whether indeed there have not been full settlements with all parties interested, the great and manifest danger that if this matter were now opened up and the sureties, who are wholly ignorant of the accounts should be put to an accounting, with no living person cognizant of the real facts to aid in stating the account or to depose to its items before the court, all these considerations, we repeat, taken with the long lapse of time during which, while the executor Mrs. Alexander and Mrs. Holmes were alive, an accounting might have been had, render the claims put forward in this bill stale demands to the satisfaction of which no court of equity ought to, or could intelligently, lend its aid. In adopting this view we go upon the well established doctrine of equity, that "where, from delay, any conclusion the court may arrive at must at best be conjectural; and the original transactions have become so obscured by lapse of time, loss of evidence, and death of parties as to render it difficult if not impossible to do justice, the plaintiff will by his *laches* be precluded from relief; and it is not even necessary that the court should be satisfied that the original claim was unjust, or has been satisfied."—12 Am. & Eng. Encyc. of Law, pp. 550-51. This doctrine is aptly illustrated in a case where a bill was filed for the settlement of partnership accounts seventeen years after dissolution. The partners were both dead, and the parties to the action were their personal representatives. It was held th it the complainant was barred by *laches*, the court saying: "Something *may* be due; I might go further and say that probably something *is* due from the estate of John W. to the estate of Martin Foster, on account of the transaction stated in the bill. But the possibility, or even the probability, that something is so due is not enough to entitle the complainant to an account. Independently of the bar of the statute. it would be a sufficient answer to a claim for an account that one cannot now be settled with any reasonable expectation of doing justice to the defendant, and that complainant's testator is in fault for not having himself asserted and prosecuted the claim." And the principle is thus stated in another case: "The pretensions of the plaintiff against the representatives of Smith are at war with the sound and well settled doc-

trines of equity, derived not merely from the presumptions and bars which prevail at law, but still more comprehensive, and founded upon considerations of policy and justice that require those, who invoke its jurisdiction to do so within a reasonable time instead of lying by until, by their supineness and negligence, there can no longer be a safe determination of the controversy, and their adversaries are exposed to the danger of injustice from the loss of information and evidence and means or recourse occasioned by deaths, insolvencies and other untoward circumstances. The application of this equitable doctrine is for the sound discretion of the equitable forum, and does not require the conviction of the court against the original justice of the claim or any other special ground of defense but its belief that under the circumstances of the case it is too late to ascertain the merits of the controversy." And so in *Caruthers v. The Trustees of* Lexington, 12 Leigh (Va.) 610, 619, it is said: "No particular period is fixed by the cases as limiting the demand for an account. If from the delay which has taken place it is manifest that no correct account can be rendered, that any conclusion to which the court can arrive must be, at best, conjectural, and that the transactions have become so obscured by time, and the loss of evidence, and the death of parties, as to render it difficult to do justice, the court will not relieve. It will not answer the plaintiff to show probable title to something. He must satisfy the court that it can extend relief without the hazard of doing injustice to the defendant." In another case a bill in equity was filed to settle the affairs of a dissolved firm. The accounts had, to some extent, been adjusted by arbitration, but it was urged that the matter in question had not been included in the reference. It was held, that after a delay of twelve years, as it was impossible, in consequence of the imperfect records kept by the arbitrators, and by reason of the deaths of parties and the loss of evidence, to determine what the arbitrators had embraced in their award, the prayer for relief must be refused."—*George v. Johnson*, 45 N. H. 456. And especially with reference to accounting by representatives of decedents' estates that "even where no presumption [from lapse of time] of payment arises, great delay which involves the loss of evidence and the death of parties, and creates a danger

of doing injustice, will be sufficient to preclude the complainants from any relief by accounting."—12 Am. & Eng Encyc. of Law, p. 589. And speaking of such a case the Court of Appeals of Virginia said : "It is a well settled principle and practice of courts of equity to refuse relief to parties seeking to enforce stale demands, long deferred, as in this case, when more than a quarter of a century has passed, the original parties in interest, the witnesses and the commissioners who settled the accounts are all dead, the written evidence all lost, an aged fiduciary, whose prompt and regular settlements for ten years attested his fidelity, has, by the ravages of time and war, lost all his property, and information, and means of defense against the demands set up in this suit for the first time in nearly thirty years, and which must fall, if allowed, upon the widow and children of the innocent sureties of his official bond." *Castleman v. Dorsey*, 78 Va. 342.

This principle of imputing staleness to a demand long delayed, though still not barred by positive statute nor conclusively presumed to have been settled, when incidents of the delay have been the deaths of parties and witnesses and the loss of evidence, is of most salutary application to the case at bar. There seems little question but that the executor might have been brought to a final and full settlement at any time within fifteen years. During that period he was living. Annie Alexander was also living, and for two-thirds of that time Mrs. Anna Holmes was alive. No reason is attempted to be assigned why the settlement was not then brought on, when the account could have been stated by Holmes, who had knowledge of its items, and when there were witnesses who could have supported it if a true account and overturned it if a false one, and shown what was the true state of the executor's accounts. It is not even suggested why these complainants waited all these years till the parties were dead and the evidence gone, when there was no man living who could state or support a true account, and then, upon this state of the case transpiring, should have at once proceeded to call upon Morris and Ray to state and prove an account of which neither of them knew anything, and of which there was no evidence in existence. It is exceedingly doubtful on the showing made in this case whether the complainant

would be entitled to anything on a fair and full settle-
ment of this administration, were such a settlement now
possible.   On the other hand, it is exceedingly probable
that if the respondents are called on, as prayed in the
bill, to make a settlement of this administration, and to
account for what the executor received including, of
course, the sixty-nine thousand dollars shown to have
been in his hands by the records of the probate court in
1875, that they will be made to pay large sums of
money, not because they owe it or George Holmes owed
it but, simply because the witnesses to show that
Holmes had paid it have died during the years that these
complainants unreasonably and without any shadow of
necessity delayed the assertion of their rights, if indeed
they had any.   The chancellor did right in denying the
relief ; and his decree is affirmed.

To be entered as of date of submission.

BRICKELL, C. J., not sitting.