# Salmon, Administrator, *v.* Wynn, Administrator.

*Bill to Remove Estate into Chancery Court and for a Final Settlement.*

(Decided June 13, 1907.   45 So. Rep. 133.)
(Rehearing denied Dec. 19, 1907.)

1. *Administration of Estates; Action; Time for Bringing.*—A bill filed within twenty years from the date when a deceased executor filed a statement of his acts for a partial settlement of the estate is not barred by the statute of limitations; but it is barred by laches where it seeks to have the chancery court assume jurisdiction of the further administration of the estate of a decedent and to require the administratrix of the deceased executor of decedent's estate to account, where it appeared that complainant had long slumbered over her rights, and might have brought the executor to a final settlement before his death, and no excuse is given for not doing so, and where it further appears that he settled with the other legatees and made large payments to complainant making it doubtful whether complainant is entitled to anything, and it is uncertain that a proper account could be stated.

2. *Equity; Pleading Without Proof.*—Proof of a fact not alleged in a bill is as unavailing for relief as is averment without proof.

APPEAL from Tallapoosa Chancery Court.

Heard before Hon. W. W. WHITESIDE.

Bill by R. V. Salmon, as administrator, etc. ,against W. H. Wynn, as administrator, etc., and others, to have the chancery court assume jurisdiction of the further administration of the estate of a decedent and to require the administratrix of the deceased executor of decedent's estate to file her accounts and make a final settlement of the deceased executor's acts as executor of decedent's estate to file her accounts and make a final settlement of Affirmed.

LACKEY & BRIDGES, for appellant.   Before the jurisdiction of the Probate Court has attached for purposes

[Salmon, Administrator v. Wynn, Administrator.]

of a final settlement of an estate, a legatee or distributee
is entitled to have the administration removed into the
Chancery Court and settlement made in that court with-
out assigning any special grounds therefor.—*Ligon v.
Ligon,* 105 Ala. 460; *Greenhood v. Greenhood,* 143 Ala.
440; *Baker, Adm'r, v. Mitchell et al.,* 109 Ala. 490. Be-
tween the distributees and the executor of a will in
which large discretion in the management and disposi-
tion of the property, and the time of settlement and dis-
tribution is given to the Executor, the relation of trus-
tee and cestui que trust exists.—*Greenlee's Adm'r v.
Greenlees et al.,* 62 Ala. 330; *McCarthy v. McCarthy,*
74 Ala. 546. When the relation of trustee and cestui
que trust exists, the doctrine of prescription has no ap-
plication until the lapse of twenty years from a recogni-
tion of the trust by the trustee.—*Harrison et al. v. Hef-
lin, Adm'r, et al.,* 54 Ala. 552; *Girrard et al. v. Futterer,
et al.,* 84 Ala. 323; *Warborn v. Austin,* 82 Ala. 498;
*Kennedy v. Wynn,* 80 Ala. 166; *Greenlees' Adm'r v.
Greenlees, et al., supra.* One appointed executor or trus-
tee as to property and who receives the rents and in-
comes therefrom and receipts therefor in his representa-
tive capacity, thereby acknowledges the existence of the
trust.—*Kennedy ct als. Exrs. v. Wynn, et al.,* 80 Ala.
166; 1 Perry on Trusts, § 261. One having entered into
possession of property in the capacity of trustee or exe-
cutor, this representative capacity will be presumed to
continue so long as he holds possession without an open
disavowal of the trust; and each act performed in rec-
ognition of the trust is a renewal of the obligations it
imposes, and the time necessary to constitute a bar
would begin only when such acts cease.—*Holt v. Wil-
son,* 75 Ala. 58; *Whetstone v. Whetstone's Exr.,* 75 Ala.
495; Perry on Trusts, § 863, note 1. It is well settled
that land directed by a will to be sold and converted into

money, which is to be distributed among certain benefi-
ciaries, is for the purposes of that provision to be con-
sidered as money from the date of the testator's death;
or if the sale is not to take place until the happening of
some contingency, then the conversion dates from the
happening of the contingency.—*Allen v. Watts*, 98 Ala.
384; *Greer v. Herren*, 41 So. Rep. 783; *High v. Worley*,
33 Ala. 196; *Fletcher v. Ashburn*, 1 Browns C. C. 497;
*Massey v. Modawill*, 73 Ala. 421; s. c. in White & Tudors
Lead. Cas. 1118 to 1157; *Craigg v. Leslie*, 3 Wheat. 564;
*Ford v. Ford*, 5 Am. St. Rep. 117 to 144; *Bunts v. Van-
dergrift*, 5 Paige 36; *Scudderd Exrs. v. Varnarsdale*, 13
N. J. Eq. 109.  Where a will contains a power of sale,
not mandatory in terms, but it is apparent from the gen-
eral scope and tenor of the will that the testator intend-
ed all his realty to be sold, the power of sale will be held
imperative and the doctrine of equitable conversion ap-
plies.—*Ford v. Ford*, 5 Am. St. Rep. 117 to 144; *Wurts
Exrs. v. Paige*, 19 N. J. Eq. 365; *Greer v. Herren*, 41 So.
Rep. 783.  A person to whom is bequeathed a share in
the proceeds of land directed to be sold and converted
into money, has no estate in the land but only an inter-
est in the execution of the trust.—*Greer v. Herren, su-
pra; Fletcher v. Ashburn, supra; Allen v. Watts, supra*.

JAMES W. STROTHERS, for appellee.  In order to be en-
titled to recover or to require a settlement of the estate
complainant must show that she has an interest therein.
—*Keith v. McCord*, 140 Ala. 406.  Any claim that com-
plainant may or might have asserted against F. A.
Vaughan, or his estate is forever barred by the laches
and long delay of complainant in asserting the same.
Where, from delay the death of parties and the conse-
quent loss of evidence any conclusion that the court may
arrive at would be conjectural, and the original transac-

[Salmon, Administrator v. Wynn, Administrator.]

tions have become so obscured by lapse of time, loss of evidence, death of parties, etc., as to render it difficult, if not impossible, to do justice, the plaintiff will, by his laches be precluded from relief; and it is not even necessary that the court should be satised that the original claim was unjust, or has been satisfied; and this is true even though the alleged claim is not barred by any statute of limitations, nor by the doctrine of prescription.— *Rives v. Morris, et als.,* 108 Ala. 527; *Semple v. Glenn,* 91 Ala. 262; *Garrett v. Garrett,* 69 Ala. 429; *Bozeman v. Bozeman,* 82 Ala. 389; *Nettles v. Nettles,* 67 Ala. 599; *Jones v. Jones,* 53 Ala. 525; *Harrison v. Heflin,* 54 Ala. 552; *Phillippi v. Phillippi,* 61 Ala. 41. Complainant has no right to have her solicitor's fees charged against this respondent, or against the estate of F. A. Vaughan for filing and prosecuting this bill.—*Foster v. Foster,* 126 Ala. 257. The book entries on the books of F. A. Vaughan which are offered in evidence in this case are competent evidence for this respondent to show the payments that were made by F. A. Vaughan as executor of James Vaughan's estate to the complainant, Mrs. Julia Greer.—*McDonald v. Comer,* 90 Ala. 147; *Dismukes v. Tolson,* 67 Ala. 386; *Elliott v. Dycke,* 78 Ala. 150..

DENSON, J.—In 1880 James Vaughan died in Tallapoosa county, leaving a last will and testament in which Frederick A. Vaughan is named as executor thereof. The will was duly probated in the probate court on the 16th day of December, 1880, and on that day Frederick A. Vaughan was appointed and duly qualified as the executor of the will and entered upon the administration of the estate as such executor. The testator left surviving him, as legatees and distributees of his estate under his will, his widow, Sarah Vaughan, three daughters, Julia Greer, Emily Wright, and Sarah P. Turner, two sons,

[Salmon, Administrator v. Wynn, Administrator.]

Samuel C. and Frederick A. Vaughan, and the children of another son, Madison Vaughan; Madison having died before the death of the testator occurred. Frederick A. Vaughan died intestate in July, 1902, without making a final settlement in the probate court of the estate of James Vaughan; and V. Cooper Vaughan was duly appointed administrator of the estate of Frederick A. Vaughan, deceased.

The bill was filed on the 3d day of March, 1903, by Julia Greer, Sarah Harrison, Julia Guthrie, and James M. Vaughan; the three latter being heirs at law of Madison Vauughan, deceased. The respondents in the bill are V. Cooper Vaughan, as administratrix of the estate of Frederick A. Vaughan, deceased, and the other heirs of James Vaughan, deceased. The purpose of the bill is to have the chancery court assume jurisdiction of the further administration of the estate of James Vaughan, deceased, and to require the administratrix of Frederick A. Vaughan's estate to file her accounts and make in the chancery court a final settlement of Frederick A. Vaughan's acts and doings as executor of the estate of James Vaughan. Pending the suit in the chancery court V. Cooper Vaughan died and W. H. Wynn was appointed administrator de bonis non of the estate of Frederick A. Vaughan, and the suit was revived against him as such administrator.

The defenses made to the bill are based on the doctrine of presumption of settlement and payment after the lapse of 20 years, staleness of demand and laches on the part of the complainants, and an actual settlement with the several claimants. On the final hearing the chancellor rendered a decree denying the relief prayed, and in his opinion is found this paragraph: "It is the opinion of the court that the slumbering on her rights on the part of the complainant, the lapse of time and the

death of parties, the uncertainty as to whether or not the life estate of Sarah Vaughan in the property willed to her has fallen in, the meager proof offered in this cause, and other circumstances disclosed by the evidence, bring this case within the principles of *Rives v. Morris*, 108 Ala. 527, 18 South. 743, and preclude complainant's right to have a settlement of said estate by the administrator of the deceased executor." It is noticeable that the chancellor treats the cause as though there is only one complainant in the bill. This manner of treatment arose from the fact that the uncontradicted proof shows a full settlement by the executor with Mrs. Julia Greer's co-complainants many years before the death of the executor. Not only that, but the documentary evidence without conflict shows that settlement had been made, many years before the executor's death, with all persons entitled to any interest in the estate except Mrs. Julia Greer. As to her there is no documentary evidence of settlement; but there is evidence in the record (which seems to have ben considered by the chancellor) tending to prove that large payments were made to Mrs. Greer long before the executor's death, and about the same time that settlements were being made with the other distributees of the estate. So that Mrs. Greer is the only real litigant, except the administrator of the estate of Frederick A. Vaughan.

It must be conceded that more than 20 years elapsed from 18 months after the granting of the letters to Frederick A. Vaughan as executor to the time the bill was filed; but it was, on demurrer to the bill, held by the chancellor that the averments of the bill are sufficient to show a recognition of the administration, or executorship, as a continuing and undischarged trust by the executor within 20 years before the filing of the bill; so that, on the face of the bill, it did not appear that the doctrine

of prescription could be applied—at least, the bill in this respect was saved from successful attack by demurrer. But it is unnecessary to discuss this doctrine of prescription, as the record shows that it was not 20 years from the date when the executor filed a statement of his accounts for a partial settlement of the estate; and whether the statement was filed under protest or not makes no difference, as by it it clearly appears that at the time of the filing thereof (1885) the executor recognized the trust as continuing, and this saves the cause of the complainant from the ban of the doctrine of prescription in consequence of the lapse of 20 years.

While this is true, the defense of staleness in the demand is not necessarily affected or disposed of by it, nor by it is the complainant relieved of the imputation of laches. It is, and always has been, the practice of courts of equity to remain inactive where a party seeking their interference has been guilty of unreasonable laches in making his application; and this, irrespective of any statute of limitations.—Story's Eq. Jur. § 1520. The principle is stated with great force and clearness by Lord Camden in *Smith v. Clay, Amb.* 645 (3 Bro. Ch. 640, note).: "Nothing can call forth this court in activity, but conscience, good faith, and reasonable diligence. Where these are wanting, the court is passive and does nothing. Laches and neglect are discountenanced, and therefore from the beginning of this court there was always a limitation to suits in this court." The doctrine was stated by Taney, C. J., delivering the opinion of the Supreme Court of the United States in *McKnight v. Taylor,* 1 How. 168, 11 L. Ed. 86, in this language: "We do not found our judgment upon the presumption of payment; for it is not merely on presumption of payment, or in analogy to the statute of limitations, that a court of chancery refuses to lend its aid to stale demands. There must be conscience, good faith, and rea-

sonable diligence to call into action the powers of the court. In matters of account, where they are not barred by the act of limitations, courts of equity refuse to interfere after a considerable lapse of time, from considerations of public policy, and from the difficulty of doing entire justice, when the original transactions have become obscure by the lapse of time and the evidence may be lost."

The principle foundations of the doctrine are acquiescence and lapse of time. But other circumstances will be taken into consideration. Thus it is material circumstance that the claim is not made until after the death of him who could have explained the transaction.—16 Cyc. 163, 764 (S, 9b) ; *Rives v. Morris,* 108 Ala. 527, 18 South. 743; *Street v. Henry,* 124 Ala. 156, 27 South. 411; *Cole v. Birmingham Un. Ry. Co.,* 143 Ala. 427, 39 South. 403; *Mooers v. White,* 6 Johns. Ch. (N. Y.) 360; *Barnes v. Taylor,* 27 N. J. Eq. 259. It has been well said by Davis, J., in *McQuiddy v. Ware,* 20 Wall. (U. S.) 19, 22 L. Ed. 311 : "'There is no artificial rule on such a subject, but each case as it arises must be determined by its own particular circumstances." In other words, it would seem that the question is addressed to the sound discretion of the chancellor in each case.—*Brown v. County of Buena Vista,* 95 U. S. 60, 24 L. Ed. 422. There are many clear and strong expositions of this doctrine by the text-writers and courts of last resort; but in the course of our reading upon the subject we have found no clearer or stronger statement of it, nor one that comes closer to the instant case, than that of McClellan, J., speaking for our own court, in the case of *Rives v. Morris, supra.* In that case, which was that of a bill filed by the heirs of a decedent against the sureties on the bond of the deceased administrator, to require an accounting

35 R

and settlement by them of the administration of their principal, in respect to the doctrine now in hand, Mc-Clellan, J., for the court, said: "The demand made by the bill for an accounting and settlement is not barred by any statute of limitations. Nor has it passed under the ban of the doctrine of prescription in consequence of the lapse of 20 years. * * * Nor, indeed, has the mere delay in bringing forward the demand, in and of itself, been sufficient to render it a stale demand. But, in our opinion, the delay, the circumstances attending and characterizing it, the altered conditions surrounding the parties at the time of bill filed and now, and the consequent uncertainty that the court will ever be able to decree a just accounting, the uncertainty, which can now never be satisfactorily resolved, whether, indeed, there have not been full settlements with all parties interested, the great and manifest danger that if this matter were now opened up, and the sureties, who are wholly ignorant of the accounts, should be put to an accounting, with no living person cognizant of the real facts to aid in stating the account or to depose to its items before the court, all these considerations, we repeat, taken with the long lapse of time during which, while the executor, Mrs. Alexander, and Mrs. Holmes were alive, an accounting might have been had, render the claims put forward in this bill stale demands, to the satisfaction of which no court of equity ought to, or could intelligently, lend its aid. In adopting this view we go upon the well-established doctrine of equity that 'where, from delay, any conclusion the court may arrive at must at best be conjectural, and the original transactions have become so obscured by lapse of time, loss of evidence, and death of parties as to render it difficult, if not impossible, to do justice, the plaintiff will by his laches be precluded from relief; and it is not even necessary that the court

should be satisfied that the original claim was unjust, or has been satisfied.' "—18 Am. & Eng. Ency. Law (2d Ed.), 105; 12 Am. & Eng. Ency. Law (1st Ed.), 550, 551. See the many authorities collated in note 2 to the text in the eighteenth volume of the second edition; *Mackall v. Casilear*, 137 U. S. 556, 11 Sup. Ct. 178, 34 L. Ed. 776, 779; *Parker v. Bethel Hotel Co.*, 96 Tenn. 252, 34 S. W. 209, 31 L. R. A. 706; *Caruthers v. Trustees of Lexington*, 12 Leigh (Va.) 610, 619; *George v. Johnson*, 45 N. H. 456. Further on, the court said, quoting from 12 Am. & Eng. Ency. Law (1st Ed.) 589: "And especially with reference to accounting by representatives of estates of deceased persons, that 'even where no presumption (from lapse of time) of payment arises, great delay, which involves the loss of evidence and the death of parties and creates a danger of doing injustice, will be sufficient to preclude the complainants from any relief by accounting.' "

Applying these principles to the case in judgment, we are at the conclusion that the decree of the chancellor should be affirmed. There is no doubt about the fact that the executor might have been brought to a final settlement long before his death, and no excuse is assigned for not having done so. The executor and the complainant had lived within a comparatively short distance of each other for a long period of time. No obstacle is alleged or shown which would have prevented a calling of the executor to a full settlement and account of his executorship, when he could have presented his account and, it may be, supported it with evidence. Moreover, it may be that a full settlement was made between the complainant and the executor. The evidence shows that he had settled with the other legatees, and evidence was offered to show a settlement with, or at last large payments to, the complainant; and it was, to say the least

of it, a little unnatural that, while·the executor was set-
tling with the other legatees, the complainant stood by
and made no appeal for her own claim. And whether
this evidence of settlement and payments is competent
or incompetent, it is made to appear that it is quite
probable an injusutice would be done by ordering a set-
tlement at this late day and after the death of the exe-
cutor. If it is incompetent evidence, as is insisted by
the complainant, it clearly shows that the laches of the
complainant prevents a proper defense by reason of the
death of the executor, and therefore the loss of evidence.
—*Tazewell v. Saunders*, 13 Grat. (Va.) 354, 362. The
jurisdiction to order the settlement depends upon the
principle that parties coming into equity must do equi-
ty, and this principle reaches cases of this description.
"If parties cannot come into equity without submitting
to do equity, a fortiori they cannot come for the interfer-
ence of this court in their own behalf, when their con-
duct· before coming has been such as to prevent equity
being done."—*Great Western Ry. Co. v. Oxford, U. &
W. Ry. Co.*, 3 De Gex, M. & G. 341, 359. The time for
Mrs. Greer to have invoked the aid of a court of con-
science was while her brother was living, when both
would have been on an equal footing in respect to pay-
ments, and settlements, and when the probability of do-
ing justice would have been more certain. We agree
with the chancellor that the long slumbering on her
rights, the death of parties, the exceeding doubtfulness
on the pleadings and proof as to whether the complain-
ant would be entitled to anything on a fair settlement
of the executorship, and the uncertainty that a proper
account could now be stated, cuts Mrs. Greer off from
invoking the aid of a court of equity in her behalf.

While the foregoing is conclusive of the case, yet, as
counsel have laid much stress on the acts of the executor

in respect to the storehouse and lot on the north side of the public square in Dadeville, we simply remark that it appears from the evidence that Frederick A. Vaughan, Mrs. Greer, and another of the devisees (Mrs. Turner) owned that in common. Mrs. Greer testified that she claimed a one-sixth interest in it. The evidence shows that Mr. Vaughan so respected her interest; and her acceptance from Mrs. Vaughan, when the store was destroyed, of one-third of the amount of insurance paid by the insurance company, would seem to confirm this theory. Further, said storehouse and lot were willed to Mrs. Sarah Vaughan during her natural life; and while the evidence tends to show she is dead, and that she died before the death of Frederick A. Vaughan, yet there is no averment in the bill that she is dead, and proof without averment is as unavailing as averment without proof. On this theory the chancellor's expression, in the opinion, in respect to the uncertainty as to the falling in of Sarah Vaughan's life estate in the property willed to her, finds justification.

The decree of the chancellor is affirmed.

Affirmed.

TYSON, C. J., and SIMPSON and ANDERSON, JJ., concur.