95 So.2d 74

Thomas H. OWENS

v.

Emma CUNNINGHAM et al.

6 Div. 113.

Supreme Court of Alabama.

May 9, 1957.

James & Beavers, Birmingham, for appellant.

Harris Burns, Birmingham, for appellees.

MERRILL, Justice.

This appeal is from a decree denying the complainant specific performance of a contract by which complainant, Thomas H. Owens, agreed to pay $2,850 to two sisters, Mary Riley and Lida Riley, for six lots between East Lake and Center Point in Jefferson County.

Respondents are the heirs of the Riley sisters, and one R. J. Strickland, who had purchased timber on some of the lots and had begun to cut it. The bill of complaint prayed for a temporary injunction against Strickland to prevent his cutting the timber, and for specific performance against the other respondents. A temporary injunction was granted, the bill was amended, demurrer thereto overruled, and answer filed setting up the incapacity of the Riley sisters to execute the contract, laches, a great increase in the value of the property since the execution of the contract, and that complainant had not availed himself of an adequate and complete remedy at law under Tit. 47, §§ 36–39, Code 1940.

The cause was heard orally by the trial court and the relief sought was denied to complainant. In his decree, Judge Giles noted that there was "plausible suggestion" that Mary Riley lacked contractual capacity because of her physical condition and the medication required by it; that the property had increased eight times in value; that the sellers and their successors in title had remained in possession, and then stated:

"Under all these circumstances, in view of the questionable contractual capacity of one, if not both the sellers,

now deceased, and the eight-fold increase in value of the property, etc., the Court is of the opinion that it cannot equitably grant the peculiar and extraordinary remedy of specific performance as against the defense of laches. * * *"

Neither party to a contract is entitled to specific performance as a matter of right, but the granting or withholding of specific performance is within the sound judicial discretion of the court, controlled by fixed rules and principles, in view of the special features and incidents of each case. Cowin v. Salmon, 244 Ala. 285, 13 So.2d 190; Homan v. Stewart, 103 Ala. 644, 16 So. 35; Rice v. Sinclair Refining Co., 256 Ala. 565, 56 So.2d 647.

The contract between Owens and the Riley sisters was executed on March 4, 1946. By its terms, the Rileys agreed to sell the six lots to Owens for $2,850, $100 of which Owens put up as earnest money with Carper & Company, real estate agents, at that time. The Rileys were to furnish an abstract of title, but this evidently was secured by Carper & Company. There was no question about the title, and the contract called for the trade to "be closed" within fifteen days after the abstract of title had been delivered, "time being the essence of the contract." Owens recorded the contract April 8, 1946.

Carper & Company was represented by one Nat Hawkins. For some reason, not clear from the record, the Riley sisters had become dissatisfied by the time the sale was ready to be closed, and notified Hawkins to that effect. Hawkins, called as complainant's witness, testified that Owens asked him (Hawkins) to "step out of the picture," that Owens would forfeit the $100 earnest money in the hands of Carper & Company, that the cost of the abstract would be paid out of the $100 and Owens would handle the matter directly with the Riley sisters.

Mary Riley died of cancer on November 7, 1946. Her sister, Lida, died of cancer on February 2, 1949. Soon after Lida's

death, the personal representative of the estates of the Riley sisters came to Owens' home. Owens and his witnesses contend that Owens was requested not to file suit, and that every effort would be made to carry out the contract. The personal representative and her witnesses denied making such statements, but testified that Owens had sent word that he wanted to buy some property, that when they arrived at his home he told them about the contract and that he was then told that the lots would never be sold to him for $2,850.

Apparently, nothing was done about the matter from early 1949 until April, 1954, when the heirs of the Riley sisters sold the timber on the lots to R. J. Strickland. He began cutting the timber and complainant filed this bill on April 8, 1954.

There was a conflict in the evidence as to the contractual capacity of both the Riley sisters, especially as to Mary. Unquestionably, she was suffering from and being treated for cancer when the contract was executed in March, 1946. Hawkins testified that they both appeared normal and appeared to know what they were doing when he discussed the matter with them and he witnessed their signatures to the contract. Friends, neighbors and relatives of the sisters testified that Mary Riley was suffering greatly before March, 1946, and that she was often under the influence of narcotics and was not capable of managing her affairs. The lower court did not decide this question, but there was considerable evidence of the "plausible suggestion" of want of contractual capacity mentioned in the decree.

We concur in the finding of the trial court that the relief should have been denied on the ground of laches on the part of complainant.

Laches precludes relief where, as a result of the delay, the original transactions have become so obscure by lapse of time or loss of evidence as to render it difficult or hazardous to do justice, and it has application where the matter is not pressed until after the death of the adverse party or a material witness. Darden v. Meadows, 259 Ala. 676, 68 So.2d 709; Salvo v. Coursey, 220 Ala. 300, 124 So. 874.

The principal foundations of the doctrine of laches are acquiescence and lapse of time. But other circumstances will be taken into consideration. It is a material circumstance that a claim is not pressed until after the death of him who could have explained the transaction. Darden v. Meadows, supra; Salmon v. Wynn, 153 Ala. 538, 45 So. 133.

In the instant case the evidence, though disputed, is strong that Owens knew the Riley sisters were not going to perform under the contract shortly after its execution. But he sat by doing nothing while Mary died that same year and Lida died early in 1949. The evidence is again strong that the contract was repudiated by the personal representative. The following from 81 C.J.S. Specific Performance § 117 (4), p. 654, is applicable:

"On repudiation of a contract the party seeking specific performance must file his bill promptly. An unexplained delay after repudiation may amount to laches, even though comparatively brief, although the length of time necessary to amount to laches depends on the circumstances of the particular case. * * *"

The mere fact that land which is the subject of a contract fluctuates in value during the period when a plaintiff delays suing will not of itself bar specific performance of the contract. Homan v. Stewart, 103 Ala. 644, 16 So. 35; Blackburn v. McLaughlin, 202 Ala. 434, 80 So. 818; Rice v. Sinclair Refining Co., 256 Ala. 565, 56 So.2d 647; but a plaintiff's delay, to the prejudice of defendant, for a period of time during which the property has changed in value, may bar him from obtaining relief.

81 C.J.S. Specific Performance § 117, p. 655. The rule is stated in 49 Am.Jur., Specific Performance, § 76, as follows:

"A common consequence of delay is a change in value of the property which is the subject of the contract, and where this has taken place the courts will usually decline to enforce specific performance. This rule is especially applicable where the complainant has laid by apparently for the purpose of taking advantage of the change in value. Equity will not relieve one guilty of gross delay who has lain by until events enabled him to make his election as to completing the contract with certainty of advantage to himself. Equity will not enable a party to speculate upon the advantage of a contract by permitting him to hold back from the assertion of his rights until it is clear that the contract is to his advantage, and then allow him to have specific performance, and thus encourage delays and favor speculation in possible changes in value. For example, an unexplained delay of the vendee for several years and a great rise in value of the property forming the subject matter of the contract will constitute an insuperable objection to the granting of a decree for specific performance, even though the plaintiff was under disability up to the time of suit. * * *"

A corresponding statement in 30 C.J.S. Equity § 118, p. 541, reads:

"A marked appreciation or depreciation, according to the circumstances, in the value of the property involved, where the right might have been asserted before such change, and the granting of relief would in consequence of the change work inequity, is ordinarily fatal to plaintiff's case. * * *"

■ We are constrained to hold that the delay of eight years in attempting to enforce his rights constituted laches on the part of complainant, and that the trial court properly denied the relief prayed for in the bill, as amended. The decree of the lower court is affirmed.

Affirmed.

LIVINGSTON, C. J., and LAWSON and STAKELY, JJ., concur.