# Gayle, *et al. v.* Pennington.

## *Bill for Discovery and Accounting*

(Decided February 3, 1914.  64 South. 572.)

1. *Accounting; Bill; Adequate Remedy at Law.*—A bill for an accounting against G., which alleges as to G.'s wife only that certain lands sold at foreclosure was bid off by her and subsequently sold at a profit, and that G. represented her in the transaction, failed to show any equity against the wife, as there was a complete and adequate remedy at law if she was liable at all; the bill not showing that complainant had any interest in, or claim or demand against, the particular funds received by her, or that she was a trustee in invitum.

2. *Same; Subjects of Equitable Jurisdiction.*—Where there is no fiduciary relation devolving a duty to render an account, and the accounts are not mutual, nor so complex and intricate that a jury cannot examine and state them with the necessary accuracy, equity has no independent and original jurisdiction.

3. *Discovery; Bill; Sufficiency.*—A bill for an accounting and discovery is not sufficient as a bill for discovery as to the purchase price received by respondent for lands in which complainant claimed to be interested where no attempt to obtain this information from the parties to. deed was shown to have been made, since the mere fact that the deeds did not recite the actual consideration, did not authorize the bill.

4. *Limitation of Action; Equitable Rights; Accounting.*—Where the wife of one of the parties to the agreement to buy and sell land and divide the profit, purchased certain of the lands at foreclosure sale, and subsequently sold them at a profit, and for sixteen years after the purchase by her no complaint was made against her or as to her purchase, and no claim was ever asserted against her, the right of the other party to an action against her was barred by limitations, if she was ever liable at all.

5. *Partnership; Accounting; Laches.*—The allegations of the bill examined and it is held that the accounting sought would be denied

for laches, as no sufficient excuse for the long delay in filing the bill appeared therefrom.

6. *Same.*—Under the agreement alleged and the facts shown by the bill, complainant's right to an accounting accrued when defendant sold certain of the lands taking other land in part payment, as the land taken in payment could have been then valued and the profits divided; complainant not being authorized to wait indefinitely for a sale of such land by respondent before demanding an accounting.

7. *Contracts; Rescission for Fraud; Condition Precedent.*—A party must disaffirm a contract by which he is defrauded at the earliest practical moment after the discovery of the fraud, and return whatever he has received under it, and must do so unreservedly.

8. *Equity; Demurrer; Laches.*—Where the bill showed a long delay in asserting the rights claimed, the defense of laches may be raised by demurrer.

9. *Same; Defense; Laches.*—As laches depends principally upon the inequity of permitting a claim to be enforced, if this inequity exists, relief will be denied, although the statutory period of limitation has not elapsed.

10. *Same.*—Laches is sufficient alone to bar equitable relief, especially where it has been so long continued as to render relief doubtful, uncertain, unfair or unjust.

11. *Same; Necessity of Doing Equity.*—Where the previous conduct of parties has been such as to prevent equity being done, such parties cannot come into equity in their own behalf.

APPEAL from Montgomery Chancery Court.

Heard before Hon. L. D. GARDNER.

Bill by Cincinnatus Pennington against W. A. Gayle and others, for a discovery and an accounting. From a decree overruling demurrers to the amended bill, respondents appeal. Reversed and remanded.

The first paragraph of the bill sets up a contract of partnership between orator and William A. Gayle, and the members of the firm of Troy, Tompkins & London, to engage in the business of buying and selling real estate in and round the city of Wetumpka; orator contributing his service in this business, buying and selling on the approval of Gayle, the other parties to furnish the money, the profits realized to be divided into five equal parts, each party to the contract share and share alike.

The second paragraph averred the purchase and the investigation of various pieces of property, which different pieces are set out and described, together with a piece of timberland consisting of about 1,840 acres situated about seven or eight miles east of Wetumpka, known as the Neil-Smith place. It is then averred on information and belief that all except Gayle and orator withdrew from the agreement and it was agreed between him and Gayle that Gayle was to furnish the money, his interest being increased to a four-fifths, and orator's remaining as it was, and that Gayle assumed to pay the entire purchase money for the property already bought, and such other property as orator might buy; that the notes were duly met by Gayle at maturity, but the title was taken in orator's name, but that, in purchasing the Neil tract, Neil did not care for any of the purchase money, and so orator gave him his notes secured by mortgage, together with interest notes; that, while it was not a part of the agreement, orator, with the consent of Gayle, looked after the renting of the property and in putting the same in favorable repair, and that he paid for repairs out of the rent collected, also some of the interest that had matured on notes executed for the purchase of the Neil place, and also paid out sums from time to time for city, state, and county taxes, and remitted the balance to Gayle, and that his services covering a period of 12 years, were worth $40 per month, which he is entitled to have paid, with interest; that orator himself sold some of the property so purchased, including two storehouses in Wetumpka, realizing on one $1,250, and the other $250, besides leaving a store and residence and lot as net profit, the same being worth between $1,500 and $1,600. Orator requested Gayle to allow him to retain a part of the profits on the sale, and Gayle replied by saying that, although the

property sold had yielded a profit, the remainder might
entail a loss, and it could not be known, until all the
property was sold, whether there would be a profit or
not, but assured orator that a full settlement would be
made when the property was disposed of. It is then
averred that Gayle paid all the notes except as to the
Neil-Smith purchase, and that that had grown vastly
more valuable; that at Gayle's request, and as Gayle
had paid all the purchase money, and orator's interest
was only in the profits he conveyed to Gayle, in 1892, all
the property remaining unsold, but continuel to collect
the rents and make repairs and pay the taxes; that,
when the Neil-Smith mortgage matured, Gayle without
informing orator, and without paying the mortgage as
he should have paid it, conceived the design of depriv-
ing orator of any interest in the resale of said land by
having the mortgage thereon foreclosed, and, Smith
having died in the meantime, the administrator adver-
tised the place for sale under the power contained in
the mortgage, and the same was bid off by and sold to
Mary W. Gayle, wife of said W. A. Gayle. It is then
averred that, at the time of the foreclosure, Gayle was
a man of means, and of fine standing and credit in the
city of Montgomery, and had the means to pay off the
mortgage, but that, even if he had no means, he could
have easily raised upon the security of the property the
amount necessary to pay off the mortgage. It is then
averred that Gayle represented his wife in all these
transactions, and that Mrs. Gayle had notice of orator's
equities. It is then averred that Mary Gayle retained
the property until the 30th of September, 1910, when
she and her husband joined in a deed of the property to
one E. G. Ensign, and that, while the express consid-
eration was $1 and other valuable consideration, orator
is informed and believed that the real amount of said

purchase money was the sum of $70,000. It is then averred that orator was without knowledge or notice of these transactions. It is then averred that in November, 1901, Gayle executed to Lancaster a deed to all the other property purchased by orator in or near the city of Wetumpka, which had not previously been sold in exchange for a 1280-acre plantation in Marengo county, and that Gayle continued to own said plantation until November, 1910, when he sold and conveyed same to the Wallas Investment Company, on a recited consideration of $5 and other good and valuable consideration. But on information and belief orator charges that a large profit was realized by Gayle on said property over and above the cost of the property which he conveyed to said Lancaster for the same, but orator does not know the amount, and has not been able to discover it. Then follows a statement of a conversation had with Gayle, the substance of which was that Gayle declined to make a settlement or statement, and that, at the request of orator's solicitors, Gayle had declined and refused to state an account which had been declined by Gayle. Then follow a number of questions propounded to Gayle for the purpose of ascertaining just what was received by him in the various dealings with the property purchased by orator for him.

Demurrers being sustained, complainant amended his bill by adding thereto that orator had made diligent effort to ascertain what said Gayle obtained for the Marengo county plantation, and the Neil-Smith place, but has been unable to ascertain through Gayle or from any other source, and that orator has no means of ascertaining, and no way of discovery or proving, the fact, without an answer from said W. A. Gayle, and that a discovery was necessary to ascertain the true facts relative thereto, except by answer of W. A. Gayle by strik-

ing out what was alleged in paragraph 2 relative to Gayle paying the purchase money; and orator being interested only in the profits, and believing in the absolute good faith of Gayle, made him a deed to all the property in 1892, and by substituting in its place the following: "Orator avers that, while he was jointly interested with said Gayle in the profits that might be derived from the purchase and sale of said land, he had the utmost confidence in the absolute good faith of said Gayle, and complied with his said request, and made him a deed to all of the said property in 1892, but that said conveyance was not intended to be regarded by either party as in any manner affecting the rights or interests of orator under said contract. Orator further avers that there was no agreement between himself and Gayle that orator should be simply an employee, or that his interest in the profits should be only a means of ascertaining his compensation; but, on the contrary, it was understood and agreed that said Gayle and himself should own jointly the profits that might be derived from a resale of said property, and that the same should be divided between them. Orator avers upon advice of counsel that, upon receipt of proceeds of the Marengo county plantation and of the other property sold as aforesaid, Gayle became and was the trustee for the benefit of your orator to the extent of his interest in said fund, and held the same in trust for orator. That it was expressly agreed that said Gayle should make sale of said property, and divide the proceeds between himself and orator pursuant to the terms of the contract. And orator avers that Mary W. Gayle became a trustee in invitum for the benefit of your orator of the proceeds derived from the sale of the Neil-Smith place to the extent of the interest of orator therein, and was and is liable to account to orator for

the same as such trustee to the extent of his interest therein."

MARKS & SAYRE, for appellant. As a bill for discovery and relief, the bill here is defective in that it does not show that the matters as to which discovery is asked, could not be otherwise shown (by the grantees in the deeds for instance): *Shackelford v. Bankhead,* 72 Ala. 479; *Va. & Ala. Mining Co. v. Hale,* 93 Ala. 542; *Sullivan v. Lawler,* 72 Ala. 72; I Pomeroy's Equity secs. 228-230; *Lucas v. Bank of Darien,* 2 Stew. 292; *Barton's Admr. v. Moseley,* 17 Ala. 796; *Perrine v. Carlisle,* 19 Ala. 691; *Crather's Admr. v. Lee,* 29 Ala. 338. Treated as a bill for discovery of assets, it is defective in that it does not allege insolvency of defendants.— *Lawson v. Warren,* 89 Ala. 536; *Williams v. Stonts,* 92 Ala. 518; *Sullivan v. Lawler,* 72 Ala. 75. Treated as a bill for an accounting, it is defective, because it does not show mutual and complicated accounts between the parties.—*Va. & Ala. Mining Co. v. Hale,* 93 Ala. 542; *Avery v. Ware,* 58 Ala. 475; *Carather v. Lee,* 29 Ala. 338; 1 Pomeroy Eq. 2nd. Ed. sec. 178; *Brown v. Burnam,* 99 Ala. 116. Besides being void under the statute of frauds, as just above stated, the transaction cannot be held to create a partnership, or a joint adventure, because it makes no provision for community in losses. —*Zuber v. Roberts,* 147 Ala. 512; *Stafford v. Sibley,* 106 Ala. 192; *Tayloe v. Bush,* 75 Ala. 432. The transaction has been construed by this court to merely create the relation of employer and employee. By an action in assumpsit, the complainant had an adequate and complete remedy at law, for any redress the bill may show him to be entitled.—*Brown v. Burnum,* 99 Ala. 114; 1 Pom. Eq. (2nd Ed.) 178. The agreement, the foundation of this suit, is shown to be a parol agree-

ment, made and entered into more than twenty-five years ago, and that complainant had not been kept in ignorance of any fact, by fraud or concealment by the defendants. Therefore, we submit that his complaint is barred by his laches.—*Fowler v. Ala. Iron & Steel Co.,* 164 Ala. 419; *Greenlees v. Greenlees,* 62 Ala. 330; *Scruggs v. Decatur Min. Co.,* 86 Ala. 173; *Mathews v. McDade,* 72 Ala. 338.

J M. CHILTON, FOSTER, SAMFORD & CARROLL, and BALL & SAMFORD, for appellee. If the bill is well filed for discovery, the court has jurisdiction to determine other germane matters, although they would be cognizable in a court of law.—*V. & A. M. Co. v. Hale & Co.,* 93 Ala. 542. The amended bill was amply sufficient to sustain it as a bill for discovery.—*Dickenson v. Goldthwaite,* 34 Ala. 638; 50 South. Rep. 445; 1 Storey Eq. Jur. sec. 458. The bill has equity as a bill for an accounting because of the relation of trust and confidence, and the facts are peculiarly within the knowledge of respondent.—*Phillips v. B'ham I. Co.,* 161 Ala. 509; *Halstead v. Rabb,* 8 Port. 63; *Powell v. Jones,* 72 Ala. 398; Storey's Ey. P. & P. sec. 218 and authorities cited; see generally as to the rights of the parties *Berry v. Colborn,* 17 A. & E. Ann. cases, 1018, and authorities cited in note.

MAYFIELD, J.—Appellee filed this bill against appellants, for discovery and an accounting. The defendants demurred to the original bill, and the demurrers were sustained, whereupon the complainant amended his bill. To the amended bill the demurrs were reinterposed, but were overruled. From this last decree this appeal is prosecuted.

The reporter will set out the material facts averred in the original bill and in the amended bill; that is to

say, such material facts as will tend to elucidate the opinion. The chancellor wrote a valuable opinion upon sustaining the demurrer to the original bill, and another, when he overruled the demurrer to the amended bill.

After a careful study of the record and of the able and extended briefs of the appellants and the appellees, we are of the opinion that the chancellor was correct in his first decree and opinion, but wrong in his second. We do not think that the amendment cured the bill of its defects pointed out by the demurrer, and must hold that the chancellor erred in overruling the demurrer to the amended bill.

We are unable to find any equity in this bill in so far as it concerns Mrs. Gayle. Her only connection with the alleged contract or dealings between the complainant and W. A. Gayle, which extended over a period of 25 years, was that her husband, as her agent, bought for her one tract of land at a foreclosure sale, and that she subsequently sold it at a profit. While the bill does attempt to hold her as a trustee in invitum, no facts are alleged which show such a relation. The bill does not show, or attempt to show, that the complainant had any interest in, or claim or demand against, the particular funds paid to, or received by, W. A. Gayle or Mrs. Gayle. If the bill sought to fix a trust upon the particular land or funds which were in the hands or under the control of Mrs. Gayle, she would be a proper party; but such is not the object of the bill. It seeks an accounting between complainant and W. A. Gayle, extending over a period of more than 20 years, and the only connection Mrs. Gayle is shown to have had with the matter is that she bought one piece of land at a mortgage sale and 10 or 15 years thereafter sold it for a profit.

[Gayle, et al. v. Pennington.]

We do not mean to intimate that any liability whatever is shown against Mrs. Gayle, but if any is, it is one the remedy for which is complete and adequate in a court of law, provided it is not barred by the statute of limitations of six and ten years; and, if barred by the statute, no reason is shown, or attempted to be shown, why a court of equity should grant relief against Mrs. Gayle. The bill shows that the foreclosure sale of the mortgage on the Neil-Smith place, at which sale Mrs. Gayle became the purchaser, occurred in 1896, 16 years before the bill was filed, and during all this time, and up to the filing of the bill, no complaint was ever made to or against Mrs. Gayle as to her purchase of this property or her liability to the complainant. The bill does not show, or attempt to show, that complainant ever, at any time before the bill was filed, claimed to have any right against Mrs. Gayle as to her purchase of this tract of land, or as to any other amount, claim, or demand. So, if complainant ever had any right of action against Mrs. Gayle as to this purchase, it was barred long before the bill was filed.

We do not think the bill is sufficient in its averments to excuse the complainant for his long delay in bringing this suit. The rights which the complainant here seeks to enforce grew out of, and depend upon, an oral contract made in 1887, a quarter of a century before the bill was filed—a mere oral agreement made between five persons, complainant, Troy, Tompkins, London, and the defendant W. A. Gayle. It is true the bill alleges that, by a parol agreement, three of the five dropped out of the agreement, and W. A. Gayle took the place and interests of the three dropping out, and that thereby complainant and defendant became tenants in common as to the profits realized from the purchase and sale of the lands. The effect of this alleged agree-

ment was that the lands were to be purchased and sold, and plaintiff was to have one-fifth of the net profits, but was not to share in the losses or expenses, and was to furnish no capital except his labor, judgment, and influence in the purchase.

No lands are alleged to have been purchased under the agreement during the last 20 years. Title to some or all of the lands purchased was taken in the name of complainant; but in 1892, 20 years before the bill was filed, complainant conveyed the title to W. A. Gayle, the respondent, under the alleged agreement that when Gayle sold the lands he should pay to complainant one-fifth of the net profits.

The Neil-Smith place was sold under a mortgage in 1896, and purchased by Mrs. Gayle. While it is alleged that this foreclosure sale was conceived and procured by W. A. Gayle for the purpose of cutting complainant out of his profits, no complaint was ever made by the plaintiff until the filing of this bill, or shortly before, which was 16 years after the foreclosure sale. The bill does not allege that any complaint was ever made to Mrs. Gayle about her purchase, or that it was ever claimed or supposed that she was liable, or would ever become liable to the complainant for profits on account of this purchase. The filing of this bill, 16 years after the purchase, was, so far as the bill shows, the first information Mrs. Gayle had that complainant would attempt to hold her liable on account of her purchase.

The remainder of all the lands purchased under the joint adventure, the bill alleges, was disposed of and conveyed to one Lancaster, in 1901, 11 years before the bill was filed, and out of the defendant W. A. Gayle 11 years before the bill was filed; and not a line or a word of writing, in all these transactions as to all this land, is alleged or shown which tends to show

that any one is liable to the complainant for one cent. The entire right and claim of the complainant is based upon a parol agreement made more than 25 years before the bill was filed. It is true the bill attempts to avoid the statute of limitations by alleging that Mrs. Gayle and her husband, W. A. Gayle, sold the Neil-Smith place for a large profit only a few years before the bill was filed; but the acts which would allow the plaintiff to share in these profits occurred 16 years before the bill was filed, and no complaint was ever theretofore made as to them.

The bill also attempts to avoid the statute of limitations by showing that, when the remainder of the lands was sold and conveyed to Lancaster, a plantation in Marengo county was taken in part payment, and that this plantation was not sold until a few years before the bill was filed.

Under the original oral agreement, giving it the construction most favorable to the complainant, it was the sale and conveyance to Lancaster which fixed the time of settlement and the amount of the profits in which the complainant had a right to share. The Marengo plantation took the place of money, and it was upon its taking over that complainant had the right to share in the profits. The plantation could have been valued, and the profits thereon, if any, then divided. The complainant shows no right to wait indefinitely for the sale, if it should ever occur, of this plantation. It was not purchased under the oral agreement as to profits; it was acquired in part payment of parts of the lands purchased. When the last of the lands purchased under the oral agreement of 1889 was sold and conveyed to Lancaster, this certainly fixed the time at which complainant was entitled to an accounting and settlement.

This case affords a strong illustration of the wisdom of the statute of frauds, and of limitations of actions, and of the equitable doctrine of laches. The amended bill, like the original, shows on its face that the complainant has slept too long upon his rights, and shows no sufficient excuse or justification for his waiting so long. The doctrine of laches, without regard to the statute of frauds or that of limitations, will prevent the relief prayed, unless the complainant can show some sufficient justification or excuse for this long delay.

Laches is a defense which may be raised by demurrer when the bill shows long delay in asserting the rights claimed.

In *Fowler v. Alabama Iron & Steel Co.,* 164 Ala. 414, 419, 420, 51 South. 395, the rule was stated by Justice SAYRE, with citation of authorities. It is there said: "It is the settled rule of practice in this state that a demurrer will lie for laches, as well as for statutory limitation appearing on the face of the bill.—*Greenlees v. Greenlees,* 62 Ala. 330; *Scruggs v. Decatur Mineral Co.,* 86 Ala. 173, 5 South. 440. It is familiar learning that, in the application of the doctrine of laches, courts of equity act in accordance with the analogy furnished by the statute of limitations, so that if the corresponding legal right, asserted under similar conditions, would be barred, the equitable action is held to have been lost by laches, by the neglect to assert it within a reasonable time. This rule is subject to modifications arising out of the relations of the parties, and which other recognized principles of equity jurisprudence require to be considered.—*Montgomery Light Co. v. Lahey,* 121 Ala. 131, 25 South. 100. Such qualifying circumstances may be found in the complainant's ignorance of his rights, or his infancy, or mental unsoundness, or that he was

in possession, or the pendency of another suit to enforce the same right, the existence of confidential relations, estoppel of the defendant, and in other circumstances as to be found noted in the reports of the adjudicated cases. In a case where the charge of laches rests upon delay only, and that delay appears on the face of the bill to have been short of the period of limitation, the reason of the rule of analogy obviously would require that special circumstances operating to destroy the right asserted should be brought forward by way of defense. Where, however, the bill shows a lapse in excess of the period of limitation, it would seem that special matters obviating the rule of analogy should be brought forward in the bill. And this is the rule stated by the authorities.—*Henry County v. Winnebago Drain Co.,* 52 Ill. 299; *Jarvis v. Martin,* 45 W. Va. 347, 31 S. E. 957; Fletcher, Eq. Pl. & Pr. § 92."

The Supreme Court of the United States, quoted by our court in *Fowler's Case, supra,* has said: "As lapse of time necessarily obscures the truth and destroys the evidence of past transactions, courts of chancery will exercise great caution in sustaining bills which seek to disturb them. They will hold the complainant to stringent rules of pleading and evidence, and require him to make out a clear case. * * * And especially must there be distinct averments as to the time when the fraud, mistake, concealment, or misrepresentation was discovered, and what the discovery is, so that the court may clearly see whether, by the exercise of ordinary diligence, the discovery might not have been before made." —*Stearns v. Page,* 7 How. 819, 829 (12 L. Ed. 928). "This is necessary to enable the defendant to meet the fraud, and the alleged time of its discovery."—*Moore v. Greene,* 19 How. 69, 72 (15 L. Ed. 533).

It was also said in *Fowler's Case, supra,* that: "It may be true, as Lord Erskine has asserted, that 'no length of time can prevent the unkenneling of a fraud.' But other principles need observance. The salutary rule of pleading which we have considered and stated requires that, if the delay in asserting a right against adverse claim be great, a sufficient excuse be alleged."

The equities of this bill, if equities it possess, must of necessity depend upon an oral contract or agreement, made between 5 persons, and more than 25 years ago, as to the purchase and sale of lands. What those terms of agreement were must determine the rights of complainant. Three of the parties to the contract are not before the court. The bill, at best, states only complainant's conclusions from, and interpretation of, that contract or agreement. The bill nowhere avers that Troy, Tompkins, or London withdrew from the contract or agreement or abandoned it. It merely avers that Gayle told complainant that the other three had withdrawn. Each of these parties may have interpreted the agreement differently. Memory of the conditions of a contract entered into 25 years ago of necessity is uncertain. To attempt to establish and enforce a trust growing out of such an agreement requires that the main facts and the asserted terms of the contract be certainly and clearly alleged.

The following propositions of law have been repeatedly stated by this court, and they are applicable to the case in hand: Where a bill is filed to enforce a constructive trust which arose out of transactions occurring more than 20 years previous to the filing of the bill, it is subject to demurrer for laches.—*Lady Ensley C. I. & R. R. Co. v. Gordon,* 155 Ala. 528, 46 South. 983.

If the party defrauded can disaffirm a contract by which he is defrauded, he must do so at the earliest practicable moment after the discovery of the fraud; this is the time to make the allegation, and it must be done promptly and unreservedly; he may affirm or disaffirm the contract, but he cannot do both; and he who would disaffirm a fraudulent contract must return whatever he has received from it.—*Harrison v. Ala. Mid. Ry. Co.,* 144 Ala. 246, 40 South. 394, 6 Ann. Cas. 804.

Laches is not like limitations, a mere matter of time, but principally a question of inequity of permitting a claim to be enforced, and, when this inequity exists, a court will refuse relief, although the time which has elapsed since the alleged injury is less than that which is made a bar by the statute of limitations.—*Cole v. Birmingham Ry. Co.,* 143 Ala. 427, 39 South. 403; *Alsop v. Riker,* 155 U. S. 448, 15 Sup. Ct. 162, 39 L. Ed. 218.

Laches alone is sufficient to bar equitable relief, especially where it has been so long continued as to render relief sought doubtful, uncertain, unfair, or unjust. —*Cole v. Birmingham Union Ry. Co.,* 143 Ala. 427, 39 South. 403.

Equity will remain inactive where a party seeking relief therein is guilty of unreasonable laches, and this irrespective of the statute of limitations. Nothing can call forth equitable interference but conscience, good faith, and reasonable diligence. If these are wanting, the court is passive and does nothing. Laches, staleness, and neglect are discountenanced in equity, and especially in matter of accounts, where they are barred by the statute of limitations. Courts of equity refuse to interfere after a great lapse of time, and refuse because of considerations of public policy and from the difficulty of doing entire and exact justice when the

original transactions have become obscure by the lapse of time and evidence may be lost.—*Salmon v. Wynn*, 153 Ala. 538, 45 South. 133, 15 Ann. Cas. 478.

If parties cannot come into equity without submitting to do equity, a fortiori they cannot come for the interference of this court in their own behalf, when their conduct before coming has been such as to prevent equity being done.—*Salmon v. Wynn, supra.*

The amended bill is also defective as one for discovery; no sufficient reason is shown why complainant could not ascertain the purchase price at which W. A. Gayle and Mrs. Gayle sold the lands in question. The mere fact that the deeds did not recite the price consideration does not authorize a bill for discovery. No attempt to obtain the information from the parties to the deeds is shown to have been made.—*Va. Co. v. Hale*, 93 Ala. 542, 9 South. 256; *Shackelford v. Bankhead*, 72 Ala. 478.

The bill is also defective as a bill for an accounting. In the case of *Virginia, etc., Co. v. Hale, supra*, 93 Ala. 543, 544, 9 South. 257, the rule as to discovery is thus stated: "As a general proposition, courts of equity do not entertain suits, the sole object of which is to recover damages for the breach of a contract; the remedy at law being adequate and complete. It is well settled that when there is no fiduciary relation between the parties devolving the duty to render an account, and the accounts are not mutual, equity has not original and independent jurisdiction in the matter of accounts, unless there is so great complexity and intricacy that a jury cannot examine and state it with the necessary accuracy.—*State v. Bradshaw*, 60 Ala. 239; *Hudson v. Vaughan*, 57 Ala. 609. The ascertainment of the profits which would have been realized by complainants involves the quantity of coal mined and controlled by de

fendant at the different mines, the market prices at each, and the cost and expense of transportation and sale in the different markets; but, these data being ascertained, the profits become a mere matter of addition and subtraction, the only difficulty consisting in the number of items. In *Dickinson v. Lewis,* 34 Ala. 638, the account involved the manufacture and furnishing of large quantities of articles of clothing during a series of years, from three different places, at a profit of a designated per cent. on the original cost. It is said: 'The account was for clothes furnished to the complainant during a series of years, and differs from the ordinary accounts of merchants in this: That the charging was controlled by a contract made at the inception of the account. There was no mutuality of accounts. On the complainant's side there was only a claim of credits for payments made. * * * There was nothing more, therefore, than an account on one side, with credits for payments made. Of such an account chancery has not original and independent jurisdiction.' And while it was said that equity will entertain jurisdiction in some cases, where there is no mutuality, it was held that the account did not present that strong case of entanglement or complication which is necessary to maintain the equitable jurisdiction. The averments in the present bill, though showing difficulty in establishing the necessary data from which to state the account, do not show any greater complexity."

It follows that the trial court erred in overruling the demurrer to the amended bill.

Reversed and remanded.

ANDERSON, C. J., and SAYRE and DE GRAFFENRIED, JJ., concur.