68 So.2d 714

## EGGART v. TENNANT.

### 3 Div. 604.

Supreme Court of Alabama.
Nov. 19, 1953.

Brooks & Garrett, Brewton, for appellant.

H. C. Rankin, Brewton, for appellee.

LIVINGSTON, Chief Justice.

The bill of complaint in this case was filed by Mary S. Eggart, and seeks the sale of certain described lands in Atmore, Escambia County, Alabama, for distribution among the alleged joint owners of said property. Upon submission of the cause for

final decree in the court below, that court held that complainant, Mary S. Eggart, had no right, title, claim or interest in or to the real estate involved in said suit, and denied to her the relief prayed for in her bill of complaint, and she appealed to this court.

The following were made respondents to the bill of complaint; namely, A. B. Tennant, Marshall Solomon, and the widow and heirs at law of Riley Solomon, deceased, whose names are alleged to be unknown to the complainant. The record discloses the following undisputed facts:

The appellant, Mary S. Eggart, who was the complainant in the court below, is the daughter of B. N. Solomon, deceased, and is his only heir at law. On November 12, 1902, W. M. Carney and wife, Adeline Carney, executed and delivered a deed to the property here involved, conveying the same to B. N. Solomon, George W. Solomon, and Lillie Solomon, the wife of George W. Solomon. B. N. Solomon, George W. Solomon, and Lillie Solomon were all dead prior to the institution of this proceeding. George W. Solomon and Lillie Solomon, who were husband and wife, left surviving Riley Solomon, who was also dead at the time this proceeding was begun, and who left a widow and some children whose names are unknown to the complainant, and Marshall Solomon, one of the respondents to the cause. On the 6th day of October, 1909, one A. F. West foreclosed a mortgage executed by Lillie I. Solomon on the 5th day of August, 1908, and which said mortgage conveyed the lands here involved, and at said mortgage foreclosure sale, one C. C. Brooks became the purchaser of said property. On January 23, 1919, C. C. Brooks and his wife, Annie Brooks, executed and delivered to Ed Leigh McMillan a deed conveying said property to McMillan. On the 16th day of December, 1933, the City of Atmore, Alabama, purchased the property at a tax sale for delinquent city taxes. On December 30, 1933, the city quitclaimed the property involved to Lily M. Tippins. On August 23, 1946, Ed Leigh McMillan and wife, Iva Lee McMillan, and Lily M. Tippins executed and delivered to A. B. Tennant a quitclaim deed to the property involved.

The appellant rests her claim to a one-third interest in the land involved on the fact that she is the only child and heir at law of B. N. Solomon, now deceased, who is named as one of the three grantees of the deed from W. M. Carney and wife, Adeline Carney, dated November 12, 1902, and she bases her claim to an undivided one-third interest solely upon the laws of descent and distribution of the State of Alabama. Manifestly, if B. N. Solomon did, in fact, dispose of his interest during his lifetime, as is contended by the appellee, than appellant has no right or title in or to the property.

The appellee, A. B. Tennant, rests his claims to the entire ownership of said property on the alleged execution and delivery by B. N. Solomon of a deed conveying his one-third interest in said property to Lillie I. Solomon and the foreclosure of the mortgage executed by Lillie I. Solomon in 1909, and the subsequent transfers of the property terminating in the deed of McMillan and Tippins to him. B. N. Solomon died December 5, 1906. The alleged deed from B. N. Solomon to Lillie I. Solomon was never produced on the trial of the case, nor does it appear to have been recorded.

Decrees pro confesso were taken against all of the respondents except A. B. Tennant, who filed an answer to the bill. Mary S. Eggart is the only appellant. As before stated, the trial court held that Mary S. Eggart had no right, title or interest in or to the land involved.

The principal question involved is the execution and delivery by B. N. Solomon of a deed conveying his one-third interest in the property involved to Lillie Solomon. Stated another way: Can the respondent, A. B. Tennant, successfully rely on an unrecorded lost deed alleged to have been executed and delivered approximately 40 years before this suit was commenced in order to defeat the claim of Mary S. Eggart, who is the daughter and only heir at law of B. N. Solomon who died December 5, 1906?

The appellee, A. B. Tennant, testified that he was a brother-in-law of Lillie Solomon, deceased, and that he knew when the deed from B. N. Solomon to Lillie Solomon was executed and delivered, and saw and knew the contents of the deed.

Likewise, other relatives of Lillie Solomon, deceased, testified that they had seen the deed; one of them testified that she had kept the deed for several weeks and knew of its existence and contents, and that search had been made among the effects of Lillie Solomon, deceased, but the deed could not be located. On the other hand, the appellant, Mary S. Eggart, testified that about the year 1921 or 1922, she employed Mr. Leon Brooks, an attorney of Brewton, Alabama, to examine the records relative to her one-third claim of the lands involved; that Mr. Brooks advised her at that time that she was still the owner of a one-third interest in the land, being the only heir at law of B. N. Solomon, deceased. Sometime later, Mary S. Eggart went to see Mr. Ed Leigh McMillan relative to said lands, and Mr. McMillan, after an examination of the records, also advised Mary S. Eggart that she had one-third interest in the lands. Mary S. Eggart began assessing and paying taxes on her one-third interest in the year 1922, and has continued to pay the same up until this suit was commenced. Mr. McMillan testified that prior to the year 1931 he advised A. B. Tennant and all of the Solomon heirs of Lillie and George Solomon as to the situation concerning his interest in said lands. In effect, Mr. McMillan disclaimed ownership of a one-third interest in said lands up until the day he executed and delivered a quitclaim deed to A. B. Tennant. Mr. McMillan also testified, in effect, that at all times pertinent to this case the appellee, A. B. Tennant, was informed as to his, McMillan's, claim to said ten acres of land and was fully conversant with everything Mr. McMillan knew concerning them. The testimony is further to the effect that nobody has been in actual possession of said ten acres of land because there is no house on it, and that it is virtually wild or unused land.

■ Adverse possession and prescription are both rigid legal exactions controlled by statutory or fixed legal standards applicable at law or in equity. They fix the legal title when their essentials are met, but possession of land is necessary to apply either to it. In our opinion, the possession of the appellant, Mary S. Eggart, is insufficient to support either a claim of adverse possession or prescription.

■ Twenty years is the prescriptive period, but it does not, without more, foreclose the right of an interested person to contest the existence and execution of an unrecorded instrument in writing claimed by another although the person named as the beneficiary in it first asserts such benefit after the expiration of that period. But once the existence and execution of a writing, including a deed, are established, it usually bars a right to have the instrument vacated for fraud or other latent defects.

■ And although it may not be subject to attack for fraud, etc., after twenty years, Wilkerson v. Wilkerson, 230 Ala. 567, 161 So. 820, the grantee may by reason of another equitable principle, or laches, be unable to institute a suit in equity to assert rights under it when on account of age, death of important witnesses, loss of the instrument, and it not recorded, failure to assert rights under it when not in possession of those rights, or there has been a change in conditions and circumstances, the consequence of which the court cannot safely ascertain the full scope of the facts concerning it, the court will not then determine the controversy as to its existence and controversy. Craig v. Root, 247 Ala. 479, 25 So.2d 147.

In the recent case of Stanmore Holstum Darden v. H. D. Meadows, Ala.Sup., 68 So.2d 709, it is said:

"The following statements, omitting cases cited, are found in Salvo v. Coursey, 220 Ala. 300, 124 So. 874, 855:

" 'The rule of laches is well understood. It precludes relief where, as the result of delay, the original transactions have become so obscure by lapse of time or loss of evidence as to render it difficult or hazardous to do justice or danger of doing injustice. * *. * This rule has application where the matter is not pressed until after the death of adverse party or material witness, or loss or destruction of the evidence that could have explained or denied the contentions made by adverse interest.'

12

"And as stated in Gayle v. Pennington, 185 Ala. 53, 64 So. 572, 577:

"'Laches alone is sufficient to bar equitable relief, especially where it has been so long continued as to render relief sought doubtful, uncertain, unfair, or unjust. Cole v. Birmingham Union Ry. Co., 143 Ala. 427, 39 So. 403.'

"The court in Hauser v. Foley & Co., 190 Ala. 437, 67 So. 252, 253, said:

"'"The true doctrine concerning laches has never been more concisely and accurately stated than in the following language of an able living judge: 'Laches, in legal significance, is not mere delay, but delay that works a disadvantage to another. So long as parties are in the same condition, it matters little whether one presses a right promptly or slowly, within limits allowed by law; but when knowing his rights, he takes no step to enforce them until the condition of the other party has, in good faith, become so changed that he cannot be restored to his former state, if the right be then enforced, delay becomes inequitable, and operates as estoppel against the assertion of the right. The disadvantage may come from loss of evidence, change of title, intervention of equities, and other causes; but, when a court sees negligence on one side and injury therefrom on the other, it is a ground for denial of relief.' Stiness, J., in Chase v. Chase, 20 R.I. 202, 37 A. 804."—5 Pom.Eq.Jur., § 21.

"'"Laches, as has been well said, does not, like limitation, grow out of the mere passage of time, but it is founded upon the inequity of permitting the claim to be enforced—an inequity founded upon some change in the condition or relation of the property, or the parties. Galliher v. Caldwell, 145 U.S. 368 (12 Sup.Ct. 873, 36 L.Ed. 738)."'"

Certainly, the appellee, A. B. Tennant, is in no better position than was Ed Leigh McMillan when he quitclaimed the property to Tennant in 1946.

▮ The deed relied on by appellee Tennant of necessity must have been executed and delivered prior to December 5, 1906, if at all. Rights under said alleged deed were never asserted by anyone prior to the filing of this suit in April, 1948. Such a delay, over forty years, in asserting rights under the deed, have been so long continued as to render relief under it doubtful, uncertain, unfair and unjust. Under all the circumstances of this case and the evidence in the record, we are compelled to the conclusion the trial court erred in finding the existence of the deed relied on by appellee. It results that the cause must be reversed and remanded.

Reversed and remanded.

SIMPSON, GOODWYN and CLAYTON, JJ., concur.